MICHAEL J. FRANZEK, Appellant, v CALSPAN CORPORATION, Appellant, and NIAGARA GORGE RIVER TRIPS, INC., et al., Defendants and Third-Party Plaintiffs-Respondents. ZODIAC, S. A., Third-Party Defendant-Appellant.

Fourth Department, December 23, 1980

APPEARANCES OF COUNSEL

*Grossman, Levine & Civiletto (Stanley Grossman* of counsel), for Michael J. Franzek, appellant.

*O'Shea, Adamson, Reynolds & Napier (John E. Adamson* of counsel), for Calspan Corporation, appellant.

*Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy (Bruce J. Hector* of counsel), for Zodiac, S. A., third-party defendant-appellant.

*Harrison & Gruber (Fenton F. Harrison* of counsel), for respondents.

### OPINION OF THE COURT

CARDAMONE, J. P.

■ ■ Before embarking on a hazardous trip with defendant, plaintiff signed a release waiving all claims caused by defendant's negligence which he might have against defendant. We hold that release to be valid. The more difficult question is—does the release insulate this defendant from the claims for contribution made by the other defendants involved. In our view it does not.

This litigation arises as a result of an attempt to traverse the "white water" of the lower Niagara River on a rubber raft. Twenty-nine persons were aboard on this experimental trip to determine the feasibility of offering regular

passenger trips to the general public. During the journey the raft capsized. Three persons died and a number including plaintiff Michael J. Franzek, were injured. Franzek sued Niagara Gorge River Trips, Inc. (Niagara) and its president, George Butterfield, who were the raft trip operators. He also sued Calspan Corporation (Calspan) an engineering firm located in Buffalo which allegedly designed, tested and evaluated the raft.

In the first and third causes of action asserted in his complaint, Franzek alleges that Niagara and Butterfield negligently caused the accident; specifically that Butterfield was negligent in offering the ride to the public, and plaintiff in particular, when he knew or should have known that the raft was unsafe and unsuitable as a means to carry passengers upon the lower Niagara River. The second cause of action, asserted against Calspan, alleges that Calspan failed to test the raft properly and negligently recommended to Niagara and Butterfield that it was suitable for use on the Niagara River.

Both defendants raised as affirmative defenses plaintiff's assumption of the risk and his waiver of liability. At the same time and in the same pleading they asserted cross claims against each other, seeking indemnification or contribution. Both defendants also impleaded Zodiac, S. A. (Zodiac), a French concern which manufactured the raft; and Zodiac raised the same affirmative defenses and cross-claimed against both defendants.

At this pleading stage of the litigation Niagara and Butterfield moved for summary judgment dismissing plaintiff's complaint on the ground that the release signed by plaintiff bars him from instituting an action against them. Special Term agreed with this contention and granted the motion. The evidence before Special Term consisted of depositions of the various parties and a copy of the release containing the waiver. These reveal that plaintiff, who has a B.A. in journalism, learned of the raft ride from the local newspaper. He claims that he was given no instructions prior to boarding the raft and only after he boarded was he handed the waiver, which he signed without reading. According to the deposition of George Butterfield, all persons

boarding the raft were required to sign the release in order to go on the trip; and that in the substantial interval of time while passengers were on the dock prior to embarkation each was required to execute the release before boarding. The release, after reciting the dangerous nature of the trip and representations as to the undersigned's age, condition and state of mind, provides:

"THE UNDERSIGNED UNDERSTANDS & EXPRESSLY ASSUMES ALL THE DANGERS OF THE TRIP.

"The undersigned waives all claims arising out of the Trip, whether caused by negligence, breach of contract or otherwise, and whether for bodily injury, property damage or loss or otherwise, which he may ever have against Niagara Gorge River Trips, Inc., its successors and assigns, and its officers, directors, shareholders, employees and agents, and their heirs, executors and administrators".

 Agreements exculpating a party from the consequences of its own negligence are disfavored and subject to close judicial scrutiny. Although such agreements are enforceable, their validity is measured by an exacting standard. Unless the intention of the parties is expressed in clear and "unequivocal terms" a negligent party will not be relieved of liability *(Gross v Sweet,* 49 NY2d 102, 107, 110; *Van Dyke Prods. v Eastman Kodak Co.,* 12 NY2d 301, 305; *Ciofalo v Vic Tanney Gyms,* 10 NY2d 294, 297). Broad exculpatory provisions which do not specifically refer to the negligence of a party, do not insulate that party from liability *(Gross v Sweet, supra,* pp 107-109; *Kaufman v American Youth Hostels,* 5 NY2d 1016). Where the waiver extends to claims arising out of the negligence of a party, whether by use of the term "negligence" or by words of similar import, it provides the negligent party with a valid defense *(Ciofalo v Vic Tanney Gyms, supra,* p 297; *Solodar v Watkins Glen Grand Prix Corp.,* 36 AD2d 552; *Theroux v Kedenburg Racing Assn.,* 50 Misc 2d 97, affd 28 AD2d 960, mot for lv to app den 20 NY2d 648; see *Gross v Sweet, supra,* p 108). The agreement here extends specifically to claims based upon the negligence of Niagara and Butterfield, its officer and agent, and bars, therefore, plaintiff Franzek's claim against them.

■ Further, plaintiff's claim that he neither read nor understood the waiver does not raise an issue of fact which might relieve him of its effect. The signer of an instrument is conclusively bound by it and it is immaterial whether he read it or subjectively assented to its terms *(Pimpinello v Swift & Co.,* 253 NY 159, 162-163). There is no allegation of fraud or misrepresentation or that a special relationship existed between the parties which would render this rule inapplicable.

■ The original suit against Niagara, its president, Butterfield, and Calspan produced a flurry of cross claims among these defendants and Zodiac. In each of these various cross claims contribution was sought. Having determined that the release bars plaintiff's suit against Niagara and Butterfield, we focus on the reasons for concluding that the same release does not insulate Niagara and Butterfield from the imposition of cross claims for contribution by Calspan and Zodiac. The statute to be construed is section 15-108 of the General Obligations Law, entitled, "Release or covenant not to sue". It provides that a plaintiff who settles with one tort-feasor may pursue his claim against other tort-feasors, with certain limitations (subd [a]); no claim for contribution may be asserted against the released tort-feasor (subd [b]); nor may the released tort-feasor obtain contribution from other tort-feasors (subd [c]).

In dismissing the cross claims, Special Term applied subdivision (b) of the statute which, as noted, bars contribution claims against a tort-feasor who has obtained a "release given in good faith by the injured person". In Special Term's view the waiver signed by Franzek was a release within the meaning of the statute.

Appellants contend that the statute only affects releases executed *after* the commission of a tortious act and that it has no application to a release obtained *prior to* or in anticipation of a tortious act. Niagara and Butterfield argue that there is no language in the statute from which that conclusion could be derived and that the statute has application without regard to the *time when* the release is obtained.

An analysis of the 1974 amendments to both section 15-

108 of the General Obligations Law (releases) and CPLR article 14 (contribution) to which it is inseparably joined, must begin with a brief review of *Dole v Dow Chem. Co.* (30 NY2d 143) which prompted the Legislature to act (NY Legis Ann, 1974, p 15). Historically, no right of contribution existed among joint tort-feasors. More recently and immediately prior to *Dole* the rule of no apportionment of liability among multiple tort-feasors had two exceptions: (1) claims for indemnification were permitted, based on the "active-passive" negligence concept, and (2) contribution among joint tort-feasors was permitted under CPLR 1401 (derived from Civ Prac Act, § 211-a) but only among those tort-feasors subject to the same judgment *(Dole v Dow Chem. Co., supra,* pp 147-148). Because of these rules denying contribution, "a wrongdoer who bargained with the injured person for his own release, not only was free of further liability to that person, but also was exempt from the obligation of contributing to the payment of a judgment obtained by the injured party against other wrongdoers" (Twelfth Ann Report of NY Judicial Conference on the CPLR, Twentieth Ann Report of NY Judicial Conference, 1975, p 224). Although these rules encouraged settlement of private disputes by protecting the settling tort-feasor from subsequent contribution claims, they failed to achieve the legitimate goal of " 'equitable loss sharing by all the wrongdoers' " *(Dole v Dow Chem. Co.,* 30 NY2d 143, 150, *supra,* quoting Werner, Contribution and Indemnity in California, 57 Cal L Rev 490, 516). The entire burden of compensation fell upon those tort-feasors whom the injured party chose to sue, even though others were also at fault.

*Dole* involved a suit brought by an injured employee against a product manufacturer who sought to implead plaintiff's employer, alleging that its own negligence was merely "passive and secondary" and that the employer's negligence was "active and primary". The court recognized that the alleged active negligence on the part of the manufacturer under prior decisions would have precluded the third-party claim. Embracing the concept of equitable sharing of the loss, the court held (pp 148-149) : "The conclusion reached is that where a third party is found to

have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party. To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties".

While *Dole (supra)* was welcomed as a "landmark in New York jurisprudence" for its positive effect on loss sharing (Developments in New York Practice, Dole v Dow Chemical Co.: A Revolution in New York Law, 47 St John's L Rev 185, 204), it had the effect of chilling the long-standing policy favoring private settlement of disputes *(Post v Thomas,* 212 NY 264). The reason was clear. After *Dole* a tort-feasor who settled with the injured party still remained liable to the other tort-feasor on the *"Dole* claim" *(Blass v Hennessey,* 44 AD2d 405). As stated by the Judicial Conference, "if the settling tortfeasor is no longer immune from further liability because he must defend against and possibly pay additional monies as a result of a *'Dole* claim' asserted by the remaining tortfeasors, he will no longer have any incentive to settle" (Twelfth Ann Report of NY Judicial Conference on the CPLR, Twentieth Ann Report of NY Judicial Conference, 1975, p 224; see McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 23A, General Obligations Law, § 15-108, pp 717-718). Thus, although the Legislature had codified *Dole* in CPLR article 14 in an attempt to promote substantial justice with respect to equitable loss sharing, notably, it had not limited this loss sharing only to joint tort-feasors, but broadened it to include concurrent, independent, successive and even intentional tort-feasors (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1401:3, p 362). Yet, it had not addressed the problem of the disinclination to settle that remained. This disinclination was removed by amendment of section 15-108 of the General Obligations Law, which freed a settling tort-feasor from all further contribution claims from other tort-feasors.

Respondents Niagara and Butterfield argue that the use of the word "release" in the statute includes agreements executed both before and after the act giving rise to the

negligence claim and that the statute does not contain the terms "settlement" or "settling tortfeasor". Concededly, that is the fact. Nonetheless, the legislative studies and the background leading to the enactment of this statute plainly indicate that it is focused on "settling" tort-feasors. Pre-accident releases of the sort before us in this case were not within the Legislature's contemplation (McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 23A, General Obligations Law, § 15-108, p 718; Siegel, New York Practice, § 176; NY Legis Ann, 1974, pp 15-17; Twelfth Ann Report of NY Judicial Conference on the CPLR, Twentieth Ann Report of NY Judicial Conference, 1975, pp 223-227; Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, pp 217-228). This view is also that adopted by the courts that have considered the statute's purpose (see, e.g., *McDermott v City of New York*, 50 NY2d 211, 219-220; *Mielcarek v Knights*, 50 AD2d 122, 126). Also, the requirement of "good faith" in subdivision (b) of section 15-108 was included to prevent postaccident collusion (Twelfth Ann Report of NY Judicial Conference on the CPLR, Twentieth Ann Report of NY Judicial Conference, 1975, pp 225-227). While the term "release" could be construed to include anticipatory waivers of the type here involved, we are not persuaded to construe the statute in that fashion. In view of the statute's purposes we do not believe that the Legislature intended its protection to extend to tort-feasors who exact preaccident waivers. These waivers are, as previously noted, generally disfavored and only reluctantly enforced by the courts. Absent a clear legislative design, which section 15-108 does not evince, this type of waiver should not operate to shield its beneficiary from an equitable burden of loss sharing. The purpose of promoting private settlements is adequately served by construing section 15-108 as barring contribution claims only against those tort-feasors who have bargained for and obtained postaccident releases. It would be inconsistent with the statutory purpose to extend the statute's protection to a tort-feasor who had exacted a release prior to a negligent act.

█ Finally, the claims for indemnification are separate from the contribution claims (CPLR 1404, subd [b]). Since

claims for indemnification are outside the scope of section 15-108 (but, see Recent Development, 44 Alb L Rev 719), they may be asserted against a settling tort-feasor and should not have been dismissed *(McDermott v City of New York*, 50 NY2d 211, 219, *supra; Riviello v Waldron*, 47 NY2d 297, 305-307; *Rock v Reed-Prentice Div. of Package Mach. Co.*, 39 NY2d 34, 38-39; *McFall v Compagnie Maritime Belge [Lloyd Royal] S. A.*, 304 NY 314, 327-328).

The order should be modified as indicated and as modified it should be affirmed.

SIMONS, HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Order unanimously modified, and as modified affirmed, without costs.