**FIREMAN'S FUND INSURANCE COMPANY and National Surety Corporation, Plaintiffs,**

v.

**NEW YORK MECHANICAL GENERAL, INC., Grinnel Corporation, Carl A. Gifaldi and Eva Gifaldi, Defendants.**

CIV–88–268E.

United States District Court,
W.D. New York.

May 18, 1989.

Samuel Goldblatt, Saperston & Day, Buffalo, N.Y., for plaintiffs.

Peter Collard, Buffalo, N.Y., Elliott Feldman, Philadelphia, Pa., John F. Canale, James D. Gauthier, Buffalo, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is a subrogated action for recovery of payments made under insurance policies covering fire damage. Jurisdiction in this Court exists pursuant to the diversity of citizenship of the parties.[1] *See* 28 U.S.C. § 1332.

It is undisputed that the plaintiffs were insurance carriers for Interstate Tire Company, Inc. ("Interstate Tire"), which is not a party to this action. Interstate Tire had leased certain real property located at 3257 Walden Avenue in Depew, N.Y. from Eva and Carl A. Gifaldi ("the Gifaldis") under a lease agreement ("the Lease Agreement"), and had occupied the warehouse thereon.

As a result of a fire on the premises August 30, 1987, Interstate Tire sustained damage to its improvements to the warehouse and to certain of its property stored therein. The plaintiffs have made payments to Interstate Tire for the latter's losses occasioned by the fire, and have brought this action as subrogees to the rights of Interstate Tire against the defendants.

The Complaint alleges that the Gifaldis were negligent in maintaining their property, specifically with reference to the warehouse's sprinkler system, that they breached the provisions of the Lease Agreement in failing to properly maintain the sprinkler system, and that they breached their warranties that the sprinkler system was in proper working condition. The Complaint also states causes of action for negligence, breach of contract (based upon a third-party beneficiary theory), and breach of warranty against defendants New York Mechanical General, Inc. ("N.Y. Mechanical General"), which allegedly designed and installed the aforementioned sprinkler system, and against Grinnel Corp. ("Grinnel"), which allegedly was responsible for the servicing and repairing of such system.

The plaintiffs have agreed to withdraw their claims against the Gifaldis, having conceded that the latter are not liable upon the claims asserted against them. *See* Affidavit of Benjamin A. Andrews, Esq. in opposition to the Gifaldis' Motion for Summary Judgment (sworn to October 20, 1988), ¶ 6. The Gifaldis had filed a crossclaim against N.Y. Mechanical General and against Grinnel, contending that any liability owing to the plaintiffs had arisen from such defendants' negligence and not from any fault of the Gifaldis. This Court has

1. Plaintiff Firemans Fund Insurance Company is a California corporation with its principal place of business in that state, and plaintiff National Surety Corporation is an Illinois corporation with its principal place of business there. Complaint, ¶¶ 1–2. Defendant New York General Mechanical Corp. (sued herein as New York Mechanical General, Inc.) is a New York corporation with its principal place of business in New York. Answer of New York General Mechanical, Corp., ¶ FIRST. Defendant Grinnell Corporation (sued herein as Grinnel Corporation) is incorporated under Delaware law and has its principal place of business in New Hampshire. Answer of Grinnell Corp., ¶ 2. And defendants Eva and Carl A. Gifaldi are each citizens of New York. Complaint, ¶ 5; Answer and Crossclaim of defendants Gifaldi (admitting allegations of their citizenship by failing to deny such). Damages are sought "in excess of $10,000." Complaint, ¶¶ 6, 14, 15, 26, 30, 34, 37, 41, 45, 48, 52, 56, and prayer for relief therein. (If the parties wish to stipulate to a corrective change of the parties' names and the title of this action, this Court will so order.)

been informed that such cross-claim has also been withdrawn.

Presently before the Court are separate motions by Grinnel and N.Y. Mechanical General for summary judgment against the plaintiffs. *See* Fed.R.Civ.P. rule 56. Each motion is premised upon a provision of the Lease Agreement which purportedly releases the defendants from liability for any fire loss sustained by Interstate Tire. Grinnel and N.Y. Mechanical General have also moved separately for leave to amend their respective answers so as to include an affirmative defense on the basis of such release clause. Each argues that it had been previously unaware of the existence of the clause.

Obviously, the viability of Grinnel's and N.Y. Mechanical General's summary judgment motions hinges upon their being able to assert the operation of the release clause as an affirmative defense. Every defense to a claim for relief must be asserted in the responsive pleading thereto except for a very limited number of procedural defenses invocable by motion—none of which is applicable here. Fed.R.Civ.P. rule 12(b). Thus this Court will first consider the motions for leave to amend.

■ Leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. rule 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The purpose of such rule, like all others of the Federal Rules of Civil Procedure, "is to facilitate a proper decision on the merits." *Foman v. Davis, supra*, at 182, 83 S.Ct. at 230; *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Thus, in the absence of resultant undue delay or unfair prejudice to the opposing party, or other justifiable reason, a district court abuses its discretion by not permitting leave to amend a pleading for purposes of presenting the real issues of the case. *Foman v. Davis, supra*, 371 U.S. at 182, 83 S.Ct. at 230. In this case, the issue of the enforceability of the purported release clause may well be central to the ultimate outcome, and the failure of this Court to consider such with relation to Grinnel and N.Y. Mechanical

General on the basis of a technicality would ill serve a resolution of the merits of the dispute. Moreover, there can be no prejudice to the plaintiffs from such consideration, inasmuch as the Gifaldis had already raised the issue in their Answer and Cross-claim. Accordingly, the motions for leave to amend will be granted, and this Court proceeds to consider the defendants' motions for summary judgment, both of which have been filed on the basis of the release clause affirmative defenses being contained in their proposed Amended Answers.

■ Under New York law any waiver of negligence liability in a real property lessor's favor is void and unenforceable unless both parties to the agreement have chosen to allocate the risk of loss to an insurer or insurers for their mutual benefit as, for example, by reciprocal waivers of subrogation rights. *Graphic Arts Supply Inc. v. Raynor*, 91 A.D.2d 827, 458 N.Y. S.2d 115, 116 (4th Dept., 1982); *see Board of Education v. Valden Assoc., Inc.*, 46 N.Y.2d 653, 657, 416 N.Y.S.2d 202, 203, 389 N.E.2d 798 (1979) (*per curiam*).

Paragraph 36 of the Lease Agreement between Interstate Tire and the Gifaldis contains such reciprocal waiver clauses:

"Landlord [the Gifaldis] hereby releases Tenant [Interstate Tire], to the extent of Landlord's insurance coverage, from any and all liability for any loss or damage caused by fire or any of the extended coverage casualties even if such fire or other casualties shall be brought about by the fault or negligence of Tenant or any persons claiming under it, provided, however, this release shall be in force and effect only with respect to loss or damage occurring during such time as Landlord's policies of fire and extended coverage insurance shall contain a clause to the effect that this release shall not affect said policies or the rights of Landlord to recover thereunder. Landlord agrees that its fire and extended coverage insurance policies will include such a clause so long as the same is obtainable and is includible without extra cost, or if extra cost is chargeable therefor, so long as Tenant pays such

extra cost. If extra cost is chargeable therefor, Landlord will advise Tenant of the amount thereof.

"Tenant hereby releases Landlord, to the extent of Tenant's insurance coverage, from any and all liability for any loss or damage caused by fire or any extended coverage casualties, even if such fire or other casualty shall be brought about by the fault or negligence of Landlord or its agents, provided, however, this release shall be in force and effect only with respect to loss or damage occurring during such time as Tenant's policies of fire and extended coverage insurance shall contain a clause to the effect that this release shall not affect said policies or the right of Tenant to recover thereunder. Tenant agrees that its fire and extended coverage insurance policies will include such a clause so long as the same is obtainable and is includible without extra cost, or if extra cost is chargeable therefor, so long as Landlord pays such extra cost. If extra cost is chargeable therefor, Tenant will advise Landlord thereof and of the amount thereof. Any increase in fire or hazard insurance premiums incurred by tenant, which increase is due solely to the character of the business operation conducted by Landlord on Landlord's premises, shall be borne by Landlord." Affidavit of Robert A. Baker, Jr., Esq. (sworn to September 1, 1988), Exhibit D (Lease Agreement).

The operability of paragraph 36 is expressly contingent upon Interstate Tire and the Gifaldis each possessing insurance policies which permit collection notwithstanding the existence of the release clause. Interstate Tire's insurance policies with the plaintiffs and the Gifaldis' policy with their insurance carrier contain the requisite permission to waive the right to collect for loss against a third party. Baker Affidavit, ¶ 10 and Exhibits E and F (copies of the respective insurance policies). Thus it would seem that paragraph 36 is both valid and effective.

Paragraph 36 expressly releases from liability only the parties to such agreement. Grinnel and N.Y. Mechanical General argue that they are also released thereunder pursuant to the provisions of section 15–108 of New York's General Obligations Law. Section 15–108 details the effect upon other joint tortfeasors of a release clause given to one tortfeasor. The other tortfeasors are not automatically discharged from liability, but they are released "to the extent of any amount stipulated by the release." *Ibid.* Inasmuch as paragraph 36 purports to release the Gifaldis "to the extent of [Interstate Tire's] insurance coverage," section 15–108 is said to undercut in its entirety the plaintiffs' subrogated action.

The plaintiffs respond by asserting that section 15–108 is inapplicable to *pre*-loss release clauses such as paragraph 36. They cite *Franzek v. Calspan Corp.* (*"Franzek"*), 78 A.D.2d 134, 434 N.Y.S.2d 288, 292 (4th Dept., 1980), in which it was determined that:

"The [statutory] purpose of promoting private settlements is adequately served by construing § 15–108 as barring contribution claims only against those tortfeasors who have bargained for and obtained post-accident releases. It would be inconsistent with the statutory purpose to extend the statute's protection to a tortfeasor who had exacted a release prior to a negligent act." *See also Westwood Chemical Co., Inc. v. Kulick*, 570 F.Supp. 1032, 1039 fn. 4 (S.D.N.Y.1983) (construing *Franzek* to have held that pre-accident releases are not covered by section 15–108).

The defendants, on the other hand, contend that *Franzek* is distinguishable from the instant one in that this case involves a release clause which resulted from arms-length negotiations between sophisticated commercial parties and which provisions are not disfavored by public policy. This Court disagrees.

*Franzek* is unequivocal in its holding that section 15–108 applies to post-injury releases only, and such holding is not based upon any peculiarity of the factual scenario there presented. The decision is based instead upon the New York courts' general disfavor for waivers of negligence

liability and upon a review of the legislative history of section 15–108, which indicates that the statute was intended to encourage the settlement of tort claims. Thus, while the statute itself is silent with respect to a distinction between pre- and post-loss releases, the court found that "[a]bsent a clear legislative design, which § 15–108 does not evince, [a pre-accident] waiver should not operate to shield its beneficiary from an equitable burden of loss sharing." [2] *Franzek, supra*, 434 N.Y.S.2d at 292.

N.Y. Mechanical General is unpersuasive in arguing that the non-application of section 15–108 to these facts would have the effect of unjustifiably negating the intentions embodied in paragraph 36—*viz.*, for an allocation of risk of property loss to the respective insurers. Grinnel and N.Y. Mechanical General were not parties to the Lease Agreement (or to paragraph 36 thereof) and were undoubtedly not within the contemplation of the Gifaldis and Interstate Tire at the time the Lease Agreement was executed. Indeed, it is precisely because Grinnel and N.Y. Mechanical General are not directly protected by the release provisions of paragraph 36 that they rely upon section 15–108 in contending that the release should be derivatively enforced on their behalves. An argument based upon the honoring of the intentions of parties to a contract has a greatly diminished persuasive force under such circumstances.

Concededly, the non-applicability of section 15–108 in this case will render the Gifaldis susceptible to an action for contribution from either or both of Grinnel and N.Y. Mechanical General in the event the latter are found liable. *See* section 1401 of New York's Civil Practice Law and Rules ("CPLR"); *see also Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). This might appear to frustrate the Gifaldis' purpose in incorporating paragraph 36 into their Lease Agreement. Yet a tortfeasor should not have to bear a disproportionate share of

liability because his joint tortfeasor has had the good fortune not to be sued or has otherwise escaped liability for his actions. Such principle remains embodied in New York law notwithstanding the enactment of section 15–108—*see* CPLR §§ 1401 (contribution) & 1404 (indemnity)—and with this principle in mind it becomes readily apparent that the *Franzek* court was correct in ascribing only a narrow purpose behind section 15–108. Such statute was designed to preserve the principle of equitable allocation of liability among joint tortfeasors while nonetheless promoting the settlement of claims.

■ Thus, only when a victim of injury or loss is willing to release a party after-the-fact in the settlement of a claim will the released party be immune from actions for contribution as well. The immunity from contribution is offered as an incentive to promote such settlements and for no other reason. Before the enactment of section 15–108, there was a disinclination to settle because the settling joint tortfeasor remained susceptible to an action for contribution. *Franzek, supra* 434 N.Y.S.2d at 291, *citing* Twelfth Ann. Report of N.Y. Judicial Conference on the CPLR, McKinney's 1974 Session Laws, Vol. 2, at 1817. Equitable allocation of liability is achieved notwithstanding such immunity because, under section 15–108, non-settling joint tortfeasors are liable only for amounts beyond those stipulated to in the release clause of the settlement agreement or beyond the consideration paid to obtain the release. Moreover, the settling joint tortfeasor is never immune from an action for indemnification. *Franzek, supra*, at 292 (citing cases).

Where the settlement of an *actual* claim—whether or not formally filed, *see Westwood Chemical Co., Inc. v. Kulick, supra*, at 1039 fn. 4— is not promoted thereby, section 15–108 should not be permitted to alter the ordinary principle of equitable allocation of liability among joint

---

**2.** The decision in *Westwood Chemical Inc. v. Kulick, supra,*—that a pre-litigation (yet post-accident) release is governed by section 15–108— was expressly reconciled with the holding in

*Franzek v. Calspan Corp.* and therefore the defendants' argument that such decision undercuts the post-accident release limitation is not well-taken.

tortfeasors. Accordingly, an anticipatory pre-loss waiver of liability is not recognized under section 15–108. *Franzek, supra.* Such rule does not work unfairness to N.Y. Mechanical General and Grinnel, because if found liable they may be entitled to contribution or indemnity from the Gifaldis. *See* CPLR §§ 1401 & 1404; *Franzek,* 434 N.Y. S.2d at 292. In sum, the defendants herein will be liable only to the extent of their fault.

This Court therefore opines that the New York Court of Appeals would adopt the decision in *Franzek* and that such court would apply the decision to the pre-loss release clause in this case. Accordingly, inasmuch as Grinnel and N.Y. Mechanical General have misguidedly invoked section 15–108 of New York's General Obligations Law, their respective motions for summary judgment pursuant thereto are hereby ORDERED denied.