## GULF, C. & S. F. RY. CO. v. ANDERSON. SAME v. ABSTON.

No. 16552—Opinion Filed April 6. 1926.

Rehearing Denied Nov. 16, 1926.

Carriers—Contracts Exempting from Liability—Invalidity as Against Public Policy.

Contracts of common carriers which assume or seek to exempt them, not only from liability for the inevitable risk attendant upon, and incident to their business, but for all subsequent or future risk, and damages of every character resulting from the negligence of themselves, their servants, and employees, are against public policy, and void.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Murray County; W. L. Eagleton, Judge.

Actions by D. A. Anderson and S. M. Abston against the Gulf, Colorado & Santa Fe Railway Company, consolidated. Judgments for plaintiffs, and defendant appeals. Affirmed.

Cottingham, McInnis & Green, F. G. Anderson, and M. M. Gibbens, for plaintiff in error.

Jess L. Pullen and W. G. Long, for defendants in error.

Opinion by JONES, C. This appeal is from two judgments rendered in companion cases in the district court of Murray county, Okla. The actions were filed by the appellees, D. A. Anderson and S. M. Abston, as plaintiffs, against the appellant, Gulf, Colorado & Santa Fe Railway Company, as defendant, in the trial court, to recover damages alleged to have been caused to plaintiffs' property situated in the town of Davis, Okla., and adjacent to appellant's right of way. The facts and the law governing the two cases, being identical, same by stipulation were consolidated in the trial court, and are consolidated in this court.

Plaintiffs allege in their petitions that the appellant's roadbed is and was constructed upon an embankment, erected and maintained across or adjacent to the lands of plaintiffs, and that said embankment was constructed across a natural watercourse, from which the waters falling upon the surface of plaintiffs' land flowed; that said defendant constructed a culvert in its embankment at the point where same was intersected by the watercourse, but that they were negligent in maintaining said culvert and carelessly permitted same to fill up by reason of the growth of vegetation, the accumulation of rocks, dirt, and other debris, which condition resulted in decreasing its capacity, and rendered it insufficient to vent the water naturally accumulating and flowing down and through said watercourse and culvert, and caused the water to back up, and upon the garden, barnyard, house, barn, cellar and well of the plaintiffs, and materially damaging same: that by reason of said water overflowing, the foundations of plaintiffs' houses were caused to settle, and the floors warped, the doors sagged in said houses, and the plaintiffs' furniture was damaged thereby, and the plaintiff Anderson alleges that he was damaged in the total sum of $1,295, and the plaintiff Abston alleges that he was damaged in a similar manner to an amount exceeding $400.

Defendant files its answer, and among other defenses avers that the plaintiffs in each of said causes had theretofore duly executed a release, whereby the plaintiffs for a consideration of $25 in hand paid to each of them by appellant railway company, forever relinquished and discharged said company "from any and all liability that has heretofore accrued or that may hereafter accrue against said railway companies, or either of them, on account of the obstruction of the flow of water and the causing of same to back upon or otherwise overflow the above described property, by reason of the construction of the main line, switches, yards, tracks, and embankments of the said railway companies, or either of them, and by reason of the construction of the dumps, culverts, fills, and openings for the passage of water made and constructed by the said railway companies or either of them. * * *"

The contract also provides that the above covenant shall run with the land. The identical contract is involved in each of the consolidated actions.

To the answer of the defendant, plaintiffs file their reply and among other contentions say:

"That said release is void and of no force and effect, for the reason that same is a release against future negligence of the said defendant, and is against public policy, therefore void. And that said release is not binding upon this plaintiff for the reason that said defendant has unlawfully, willfully, and negligently allowed the holes and eyes in said culvert to be clogged and filled with dirt, logs, rocks, and debris, so that the water cannot pass through the eyes of said culvert, and that all of these acts have been done by said defendant since the signing of the said release, and that the negligent care and operation of said culvert is the proximate cause of the damage to said plaintiff's property."

Upon the issues thus joined, the causes were submitted to the court and jury, and resulted in a verdict in favor of the plaintiff Anderson in the sum of $244.50, and for the plaintiff Abston for the sum of $90. Judgment was rendered by the court in accord with the verdict of the jury, from which judgment the appellant prosecutes this appeal, and sets forth numerous assignments of error, but in its briefs submits only one proposition, viz:

"That the releases being valid when and where made, were binding upon the plaintiffs both as to the damages which were sustained after the execution thereof, as well as for the damages sustained prior thereto."

And in presenting this contention, appellant especially attacks the correctness of the court's instruction, wherein the jury was advised that such contracts were binding on the plaintiffs only as to damages which were sustained up to the date thereof, to wit, February 6, 1907.

Appellant, in support of its contention, cites the case of Gulf, Colorado & Santa Fe Ry. Co. v. Thornton (Tex. Civ. App.) 109 S. W. 220, but we do not find this authority to be in point. There the landowner, Stewart, entered into an agreement with the railway company, whereby, for a valuable consideration, it was agreed that certain trestle works erected by the railway company, and upon which its roadbed was constructed, might be removed and replaced with a dump or embankment, which necessarily impeded the flow of waters. A portion of the consideration was that the railway company should build a crossing over its right of way on the lands of Stewart, and it seems from the record that no crossing had been constructed as agreed upon. The suit was instituted by the tenant of Stewart, Thornton, for damages sustained to his crops by reason of the overflowing of same by the waters, which was alleged to have been caused by reason of the construction of the embankment by the railway company, and plaintiff relied on the failure of construction or breach of contract, by reason of the fact that the railway company had failed to construct the crossing; and the court, in passing upon this matter, held that the failure of consideration was personal to the landowner, Stewart, and could not be relied upon by the tenant, Thornton, as a breach of the contract; and second, that the tenant, Thornton, entered upon the lands, and pitched his crop with at least constructive notice of the contract, and at his own peril.

Updegrove v. Pennsylvania S. V. R. Co., 132 Pa. 540, 19 Atl. 283, and other authorities, are cited as upholding the doctrine here

contended for, but we are not inclined to concur in those opinions or the contention made. In the first place they are not applicable to the facts in the instant case, because the plaintiffs complain of and allege negligence on the part of defendant subsequent to the execution of the contract, in the manner of maintaining the culvert in said embankment, and allege that the manner of maintaining same was the proximate and direct cause of the injuries complained of, and even though this court should hold that such a contract as is here sought to be enforced was legitimate, and authorized in this jurisdiction, it would not defeat plaintiffs' cause of action in the instant case. The testimony of two witnesses offered in the trial of the case was to the effect that the culvert in question had filled up to the extent of about two feet, and was in that condition at the time the injury here complained of was sustained, and the court in the eighth paragraph of its instruction advised the jury that if they were satisfied, by a preponderance of the evidence, that the plaintiffs had suffered damages, and that those damages were occasioned and brought about through the negligence of the defendant in maintaining the embankment, on which is located the roadbed of defendant, etc., they should find for plaintiffs, and in paragraph 6 of the instruction calls the jury's attention to the allegation of plaintiffs, concerning the negligent manner of maintaining the right of way of defendant across the creek or watercourse over which the culvert is situated, and while these instructions are not as specific as they might have been, we think in view of the fact that the only complaint made concerning the maintaining of the roadbed or embankment was concerning the manner of maintaining the culvert in question, that the instructions were sufficient, and that there is nothing contained in same which would be calculated to mislead or prejudice the jury in any particular.

In view of the status of the record, wherein subsequent negligence is pleaded and relied upon, we think the case might be affirmed on this issue alone, however, appellant insists that the question of the legality of the contract here involved be passed on, and we now pass to that phase of the case. In 6 R. C. L. page 727, section 132, the following rule is announced:

"Undoubtedly contracts exempting persons from liability for negligence induce a want of care, for the highest incentive to the exercise of due care rests in a consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. It has there-

fore been declared to be good doctrine that no person may contract against his own negligence. * * *"

Section 133, Id., announces the following rule:

"The rule as to exemption from liability for negligence, even in its modified form, is applicable to public carriers. The fact that a contract, which exempts the company from liability for negligence, relieves it from an absolute duty imposed by law and increases the danger to the lives and property of the people, constitutes the reason for the rule that such contracts are against public policy. * * *"

And in section 120, Id., we find this statement, under a discussion as to what contracts are against public policy:

"It embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel. * * *"

In the case of Jungblum v. Minneapolis, N. U. & S.. W. R. Co., 72 N. W. 971, the Supreme Court of Minnesota, in passing upon a somewhat similar question as here involved held:

"That the deed only released the defendant from all damages resulting from a reasonable and nonnegligent construction of a railway over and upon the premises conveyed."

And in Cooley on Torts (2nd Ed.) page 825, the author states, in discussing contracts against liability for negligence:

"But there may be contracts which, perhaps, public policy would forbid. This has been held to be the case with the contracts of common carriers which assumes to exempt them not only from liability for the inevitable risks attendant upon their business, but for risks from the negligence themselves and their servants."

In Freemont, E. & M. V. R. Co. v. Harlr 70 N. W. 263, the Supreme Court of Nebraska held, in dealing with a rule somewhat similar to the one involved in the instant case:

* * *"(3) ·That the release should be given the same effect as if it were a judgment rendered in a condemnation proceeding instituted by the railroad company for right of way over the land; (4) that in such a judgment, and therefore in the release, were not included damages for injuries that might afterwards arise as the result of a negligent construction, maintenance, or operation of the road; (5) that it was not within the contemplation of the parties to the right of way deed, at the time it was executed, that the railroad company would negligently construct, maintain or operate its road. * * *"

In the Freemont opinion many authorities are cited and, among others, Miller v. Railroad Co., 63 Iowa, 680, 16 N. W. 567, wherein we find this quotation:

"The plaintiff's grantor had a right to presume, when he conveyed the land to the company that built the road, that the work of constructing the road would be properly done—that sufficient culverts for the passage of surface water at proper places would ·be put in and maintained. * * *"

In the case of Brown et ux. v. Pine Creek Ry. Co., 38 Atl. 401, the Supreme Court of Pennsylvania announces the rule as follows, in the fourth paragraph of the syllabus:

" 'An agreement by one whose land has been appropriated by a railroad company, releasing all claims for damages which we have sustained or shall sustain by reason of the location, construction, and operation of the road,' releases only the damages which the viewers are authorized by statute to assess, and does not include damages caused by subsequent negligence of the company in constructing a bridge and embankment on the appropriated land."

The general doctrine announced by R. C. L. and other law-writers seems to support the theory that such contracts as here relied upon are illegal and unenforceable. in so far as future damages are concerned, resulting from the negligent acts of railway companies. There is, however, a conflict of authorities so far as the decisions of the courts are concerned, but we think the authorities cited substantially support the doctrine as announced in R. C. L. heretofore cited, and are especially applicable to a contract such as is here relied upon, and the undisputed evidence in this case discloses that the contracts in the instant case were executed and resulted from, and were made in settlement of, suits which were formerly instituted by the plaintiffs herein to recover specific damages caused by the overflowing of their crops and premises, and they executed same under the advice of their attorney, to the effect that it was necessary to enter into such an agreement in order to collect for the damages sustained and sued for, and while the plaintiffs are not permitted to vary the terms of a written agreement, such as is here involved, the question of consideration is always an open one, and whether the consideration paid in the instant case was for damages already sustained, or to exempt defendant from any future damages, is not clear, and we are inclined to the opinion that before a contract such as is here relied upon can be upheld, it must be clearly shown that

the question of future damages, and the specific character and extent of such damages, must have entered into the consideration and been within the contemplation of the parties at the time the contract was entered into. and that the consideration passing be adequate to cover such damages as may have been within the contemplation of the parties. We would not hold that a contract governing and exempting liability for future damages, resulting from the negligence of the defendant might not be entered into, but it must be clear, definite, and unambiguous, and show on its face the exact nature, character. and extent of the damages which are within the contemplation of the minds of the contracting parties, and must be in the nature of a settlement for permanent and continuing damages to the freehold, and for such injuries and damages as may be computed to a reasonable degree of certainty.

We are inclined to the opinion that the instruction complained of, when applied to the facts in this case and the contract in controversy, was substantially correct, and that the contracts do not exempt the defendant from liability for the injuries complained of. and which is the basis of the actions here involved, and finding no substantial error, we hold that the judgment rendered in the causes here consolidated should be and the same are hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 10 C. J. p. 155 §195; p. 714 §1154.