1998  OK CIV APP  17

1998  OK CIV APP  17

**Clark MANNING, Plaintiff/Appellee/Counter–Appellant,**

**v.**

**Carlos BRANNON, Individually, and Carlos Brannon, d/b/a Paradise Sport Parachute Center, Defendant/Appellant/Counter–Appellee.**

**No. 86586.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 15, 1997.

Certiorari Denied March 2, 1998.

Virginia Henson, Shawnee, for Appellant.

Karen E. Faulk, Holly Waldron, Faulk & Waldron, Oklahoma City, for Appellee/Counter–Appellant.

JOPLIN, Judge:

Defendant/Appellant Carlos Brannon, individually and d/b/a Paradise Sport Parachute Center (Brannon, Paradise or collectively, Appellant), seeks review of the trial court's order granting judgment on jury verdict against Paradise and for Plaintiff/Appellee Clark Manning in Manning's action to recover damages after suffering injury in a parachute jump. In this appeal, Paradise asserts—inter alia—error by the trial court in overruling Appellant's demurrer to the evidence and, by extension, denying Appellant's motion for directed verdict and motion for judgment notwithstanding the verdict, arguing that Manning executed a valid and enforceable agreement releasing Appellant from liability for any injury Manning might suffer in the course of his parachuting. We so find, and hold the orders of the trial court overruling Appellant's demurrer to the evidence and denying Appellant's motions for directed verdict/judgment *non obstante verdicto* should be reversed.[1]

On September 26, 1992, Manning went to Paradise to learn how to skydive. During six hours of training, Manning was also given a detailed exculpatory contract, releasing Paradise from liability in the event of Manning's injury or death. Manning watched a video tape in which an attorney explained the terms of the contract, and read, signed, and initialed the contract in fourteen places.

Subsequently, Manning successfully completed one "static line" parachute jump. On October 3, 1992, Manning returned and again successfully completed a jump. However, on Manning's second jump of the day both his main and reserve chutes malfunctioned by deploying simultaneously and, as instructed, Manning cut away his main chute. Thereafter, either Manning's reserve chute failed to fully inflate; Manning was unable to properly control the jump; and/or Manning deliberately disregarded audio instructions he was receiving from a jump instructor on the ground. In any event, Manning began to spiral and fell into a shallow pond, sustaining injury.

Thereafter, Manning brought the instant action against Paradise, alleging Paradise's negligence in failing to properly pack and/or inspect the parachutes, and in failing to adequately train and/or monitor him. Paradise answered, denying liability *inter alia* under the exculpatory contract executed by Manning.

The matter proceeded to trial. At the close of Manning's case in chief, Paradise interposed a demurrer to the evidence citing the exculpatory contract as one of the grounds for relief, but the trial court overruled the demurrer. At the close of Paradise's defense, Paradise moved for directed verdict, again asserting no liability under the exculpatory contract, but the trial court

---

1. This holding renders Manning's cross-appeal based on alleged inadequate damages moot.

again denied Paradise relief. The trial court submitted the matter to the jury on basic negligence instructions. The jury returned a verdict finding both parties 50% negligent and awarding Manning damages, and the trial court denied Paradise's subsequent motion for judgment notwithstanding the verdict. Paradise appeals the adverse judgment, while Manning counter-appeals, alleging inadequacy of damages awarded.

■ The Oklahoma Supreme Court has long recognized that exculpatory contracts, i.e., a contract to avoid liability for damages also known as a "waiver" or "release," may be valid and enforceable. *See, e.g., Schmidt v. United States,* 912 P.2d 871 (Okla.1996); *Thomas v. Holliday,* 764 P.2d 165, 168, fn. 7, 8 (Okla.1988); *Gulf, C. & S.F. Railway Co. v. Anderson,* 120 Okla. 60, 250 P. 500 (1926). That is to say, so long as (1) the intent to excuse one party from the consequences of his or her own negligence is expressed in clear, definite and unambiguous language, (2) the agreement was made at arm's length with no vast disparity of bargaining power between the parties, and (3) the exculpation is not contrary to statute or public policy, such a waiver or release from liability is valid and enforceable. *Schmidt,* 912 P.2d at 874; *Trumbower v. Sports Car Club of America, Inc.,* 428 F.Supp. 1113 (W.D.Okla.1976); *Graham v. Chicago, R.I. & P. Railway Co.,* 431 F.Supp. 444 (W.D.Okla.1976); *Gulf, C. & S.F. Railway Co.,* 250 P. at 502.

■ Regarding the first requirement, a contractual provision excusing a party from liability must "clearly and cogently (1) demonstrate an intent to relieve that person from fault and (2) describe the nature and extent of damages from which that party seeks to be relieved." *Schmidt,* 912 P.2d at 874. In the present case, the exculpatory contract, signed and initialed by Manning in fourteen places, provided in pertinent part:

(2) RELEASE FROM LIABILITY. I hereby release and discharge Paradise from any and all liability, claims, demands or causes of action that I may hereafter have for injuries or damages arising out of my participation in parachuting activities, even if caused by negligence or other fault of Paradise.

(3) COVENANT NOT TO SUE. I further agree that I WILL NOT SUE OR MAKE CLAIM against Paradise for damages or other losses sustained as a result of my participation in parachuting activities.

(4) INDEMNIFICATION AND HOLD HARMLESS. I also agree to INDEMNIFY AND HOLD Paradise HARMLESS from all claims, judgements (sic) and costs, including but not limited to attorneys' fees, and to reimburse them for any expenses whatsoever incurred in connection with an action brought as a result of my participation in parachuting activities.

(5) ASSUMPTION OF THE RISK. I understand and acknowledge that parachuting activities are inherently dangerous and I EXPRESSLY AND VOLUNTARILY ASSUME THE RISK OF DEATH OR OTHER PERSONAL INJURY SUSTAINED WHILE PARTICIPATING IN PARACHUTING ACTIVITIES WHETHER OR NOT CAUSED BY THE NEGLIGENCE OR OTHER FAULT of Paradise including but not limited to equipment malfunction from whatever cause, inadequate training, and deficiencies in the landing area, or any other fault of [Paradise].

. . .

(7) LIMITATION OF WARRANTY. Paradise hereby warrants, that the equipment provided by Paradise has been previously used for parachuting activity. This warranty is the only warranty made and is in lieu of any other warranties, express or implied, including but not limited to a warranty of merchantability or fitness for a particular purpose.

(Emphasis original). Manning also viewed a video in which an attorney explained the exculpatory contract.

We find as a matter of law, and Manning agrees, that the above-quoted language is clear and unambiguous. First, the language clearly and cogently demonstrates the intent to relieve Paradise from liability, the contract containing, inter alia, the capitalized headings, "RELEASE FROM LIABILITY, COVENANT NOT TO SUE, INDEMNIFICATION AND HOLD HARMLESS, and

LIMITATION OF WARRANTY," all applying specifically to Manning and Paradise. Second, we find paragraph (5) describes the nature and extent of damages Paradise sought to avoid in language any layperson could understand, i.e., that parachuting was dangerous and could lead to death or injury, that participation therein was purely voluntary, that the risk of injury was assumed by Manning even if due "to equipment malfunction from whatever cause, inadequate training, and deficiencies in the landing area, or any other fault of" Appellant.

█ As to the second requirement, the court must ascertain the equality of the contracting parties' bargaining power by assessing first the "importance of the subject matter to the physical or economic well-being of the party agreeing to the release" and second the "amount of free choice that party could have exercised when seeking alternate services." *Schmidt,* 912 P.2d at 874. As to the former, Manning neither adduced evidence nor argued that parachuting was necessary or important to his physical or economic well-being. Regarding the second element, Manning again neither adduced evidence nor argued that he had no choice but to agree to be trained by and jump with Paradise as opposed to going elsewhere, parachuting without training, or choosing not to jump; in fact, the record reflects Manning was offered his money back if he did not want to jump and was offered the names of other sky-diving training facilities. See e.g., *Trumbower,* 428 F.Supp. at 1117. Accordingly, we find no disparity in the bargaining power of the parties.

█ Finally, in order for an exculpatory contract to be valid, it must not violate public policy; that is, an exculpatory contract may not "injure public morals, public health or confidence in the administration of the law" nor "destroy the security of individuals' rights to personal safety or private property." *Schmidt,* 912 P.2d at 875. Although we know of no Oklahoma cases involving exculpatory contracts in the context of high risk sports activities such as sky diving, other jurisdictions which have addressed exculpatory contracts in this context have found no violation of public policy. *See, e.g., Hulsey v.*

*Elsinore Parachute Center,* 168 Cal.App.3d 333, 214 Cal.Rptr. 194 (1985) (following both logic and persuasive holdings from other jurisdictions, exculpatory contract regarding skydiving activities not against public interest or contrary to public policy); *Jones v. Dressel,* 623 P.2d 370, 377 (Colo.1981) (exculpatory contract relied upon by operator of sky diving facility did not fall "within the ambit of agreements proscribed as against public policy"). *Accord, Schutkowski v. Carey,* 725 P.2d 1057 (Wyo.1986) (sky diving); *Franzek v. Calspan Corp.,* 78 A.D.2d 134, 434 N.Y.S.2d 288 (1980) (white-water rafting); *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961) (swimming and health club); *Corpus Christi Speedway v. Morton,* 279 S.W.2d 903 (Tex. Ct.App.1955) (auto racing). Oklahoma has however rejected public policy attacks to exculpatory contracts in other situations. *See, Elsken v. Network,* 838 P.2d 1007 (Okla.1992) (limitation of liability clause in exculpatory contract not void as against public policy even though burglar alarm company allegedly failed to respond to a break-in); *Fretwell v. Protection Alarm Co.,* 764 P.2d 149 (Okla. 1988) (where alarm company allegedly violated duty to protect homeowners from criminal activity, limitation of liability clause not void as against public policy). Under these authorities, we find an exculpatory contract in the context of a high-risk sport such as sky diving not against the public policy of this state.

█ Manning also challenged below and argues on appeal the exculpatory contract in the present case violates 15 O.S.1991 § 212.1. That section provides:

> Any notice given by a business entity which provides services or facilities for profit to the general public and which seeks to exempt the business entity from liability for personal injury caused by or resulting from any acts of negligence on its part or on the part of its servants or employees, shall be deemed void as against public policy and wholly unenforceable.

However, this statute clearly and by its own terms applies to a *notice,* i.e., a unilateral and unbargained-for disclaimer, by which a for-profit business seeks to avoid liability. Sec-

tion 212.1 clearly does not apply to those situations where the parties enter into a plain and unambiguous written contract, understood, signed and accepted by the party seeking to avoid its terms. *Schmidt*, 912 P.2d at 873, fn. 8. Accordingly, we reject this proposition.

■ Finally, Manning alleges the instant exculpatory contract violates 15 O.S.1991 § 212. That section provides:

All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another or violation of law, whether willful or negligent, are against the policy of the law.

However, we find the terms of § 212 do not expressly or implicitly prohibit enforcement of an exculpatory contracts of the type we are faced with today, that statute avoiding the effect of *only* those contracts which attempt "to exempt any one for responsibility for his own ... *willful* injury to the person or property of another or violation of law, whether willful or negligent." We therefore conclude that § 212 does not, as a matter of public policy, proscribe contracts exempting liability for personal injury arising from ordinary negligence. *Schmidt*, 912 P.2d at 873, fn. 8.

In the present case, Manning asserts the trial court found Paradise grossly negligent in failing to properly pack Manning's parachutes, train Manning, and/or use appropriate radio monitoring. We have reviewed the record and find nothing therein suggesting the trial court made any such finding. On the contrary, the pre-trial conference order states Manning's cause of action sounded in ordinary negligence and further omits any mention of punitive damages, originally prayed for in Manning's petition. Furthermore, the trial court's instructions to the jury, to which we find no objection by Manning, do not mention gross negligence, willful injury to person or property, or willful or negligent violation of law. Nor do we find any evidence adduced by Manning of any grossly negligent or willful conduct by Paradise. We therefore find § 212 inapplicable.

■ "When the trial court considers a demurrer to the evidence or a motion for directed verdict, it must consider as true all evidence and all reasonable inferences favorable to the party against whom the demurrer or motion is directed, and disregard any conflicting evidence which is favorable to the demurrant or movant." *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121, 130 (Okla.1984). In the present case, Manning introduced no evidence arguably tending to show Appellant guilty of anything other than ordinary negligence, yet Manning clearly and unambiguously released Appellant from any liability therefor when he knowingly executed the exculpatory agreement. We therefore conclude the trial court erred in overruling Appellant's demurrer to the evidence and in denying Appellant's motion for directed verdict.

The order of the trial court entering judgment on jury verdict for Manning is therefore REVERSED.

BUETTNER, J., concurs.

HANSEN, P.J., dissents with separate opinion.

HANSEN, Presiding Judge, dissenting:

The majority reverses a judgment on a verdict wherein a jury found Appellants were negligent, possibly in the manner in which they packed Manning's parachute. The majority, by reversing this finding, holds as a matter of law, that the waiver Manning signed absolved Appellants from any responsibility for their negligent acts.

Although the majority correctly recognizes the courts of Oklahoma have stated a person may, by contract, expressly agree to accept a risk of harm arising from a defendant's negligent or reckless conduct, the Supreme Court has consistently added the caveat that such an agreement is invalid if it is contrary to public policy.

The facts in *Schmidt v. United States*, 912 P.2d 871 (Okla.1996) are strikingly different from those set out here. The case before the federal court, certifying questions to the Oklahoma Supreme Court, involved a waiver of liability contained in a rental horseback riding agreement. That waiver was not

nearly as broad as the one Manning signed. The plaintiff in *Schmidt* claimed during her ride a ride leader employed by the stables negligently rode up behind her, frightened her horse and caused it to throw her to the ground causing her injuries. The Supreme Court held: "The validity of the Schmidt/Stables exculpatory clause in suit depends on the outcome of the *fact-finding* investigation to be conducted in the certifying court. (emphasis supplied). If—under the test we announce today—that court should determine that *any single requirement* for the clause's enforceability has not been met, its decision could not uphold the contract and exonerate the United States." This holding certainly opens the door for fact determinations by a jury.

In my view a party should not be permitted to contract to exculpate himself from responsibility for severe *personal injury* resulting from his acts in willful or reckless disregard for the safety of others, particularly where any negligence would create a strong potential of immediate and violent death. In such an instance, to require a participant to allow Appellants to be negligent in packing a parachute certainly violates the public policy of this state.

Article 23 § 6 of the Oklahoma Constitution provides:

The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury.

Article 2 § 6 further provides:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

And further amplifying these provisions is Article 23 § 8 of our Constitution.

Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void.

In addition to 15 O.S.1991 § 212 cited by the majority provides:

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another or violation of law, whether willful or negligent, are against the policy of the law.

And 15 O.S.1991 § 211 states:

Those contracts are unlawful which are:

1. Contrary to an express provision of law.

2. Contrary to the policy of express law, though not expressly prohibited; or,

3. Otherwise contrary to good morals.

Although it may be argued that none of these provisions expressly invalidates the agreement Manning signed, I cannot agree the waiver permitted Appellants to be negligent *as a matter of law*. These constitutional provisions and statutes, read together, do reflect the public policy of this state. They further strengthen the concept of legal responsibility for death or severe personal injury caused by one's active negligence. And they certainly mandate that a jury should decide these questions.

The majority's ruling today seems to approve, as a matter of law, a defendant's right to require a participant in its activities to expressly assume the risk of any negligence, no matter how egregious the consequences might be. I dissent to that concept. I cannot hold, as a matter of law, that Manning assumed all the risk of such severe injury or death that might result from any kind or degree of negligence by Appellants.

The waiver is evidence Manning may have assumed the risk. But whether the waiver constituted assumption of all risks possible should be decided by the jury and not, as a matter of law, by this Court. Perhaps some day Oklahoma will allow a person to "contract against his own negligence" to exculpate him from liability for death or severe personal injuries to another, no matter how wanton or reckless that person's disregard for another's safety might be. I sincerely hope not.