2003 OK CIV APP 31

**Georgia N. BURD, Plaintiff/Appellant,**

v.

**KL SHANGRI–LA OWNERS, L.P., Highgate Hotels, Inc., and Highgate Holdings, Inc., all d/b/a Shangri–La Resort and John Doe 1–3, Defendants/Appellees.**

**No. 98,235.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 23, 2002.

Certiorari Denied Feb. 18, 2003.

---

Andrew B. Morsman, Andrew B. Morsman, P.C., Tulsa, OK, for Plaintiff/Appellant.

Tracy Pierce Nester, Law Offices of Larriet E. Thomas, Oklahoma City, OK, for Defendants/Appellees.

Opinion by JERRY L. GOODMAN, Judge:

¶1 This is Georgia N. Burd's (Patron) appeal from the trial court's August 19, 2002, order granting summary judgment to all defendants on Patron's petition for damages from personal injuries suffered while on defendants' premises. The appeal was assigned to the accelerated docket pursuant to Okla.Sup.Ct.R. 1.36, 12 O.S.2001, ch. 15, app. 1. Based upon our review of the facts and applicable law, we reverse and remand for further proceedings.

## FACTS

¶2 According to Patron's petition, filed March 16, 2001, she was injured while on the premises owned by the above named corporate defendants (collectively, Shangri–La) on May 12, 1999. Patron was participating in a tennis tournament held at Shangri–La when she tripped over rolls of carpet stored next to the tennis court. The carpet rolls were hidden from plain view by hanging curtains. Shangri–La generally denied the allegations and raised the affirmative defenses of contributory negligence, assumption of the risk, failure to state a claim, and inadequate notice of a dangerous condition.

¶3 On May 9, 2002, Shangri–La filed a motion for summary judgment. The motion set out as evidentiary material a document executed by Patron and other members of her tennis league prior to the start of the tennis season. The document stated, in relevant part: [1]

Waiver of Claims: ....

I agree; for myself, my executors, administrators, heirs and personal representatives; that all claims of any kind, nature

rules and demonstrate good sportsmanship.

1. We note this document also serves as a roster sign up sheet and a promise to play by league

and description are waived, including past, present and future claims, if any, for injuries sustained in traveling to or from, or participating in, local league play in a USTA/MVTA tennis league. *I further agree to release any facility (including, but not limited to, private clubs or public parks)*, its officers or employees; and any personnel associated with the league itself (including officials, the district association, committees and employees; the USTA, its officers, committees and employees; and any sponsors of the local league). (Emphasis added.)

¶ 4 Shangri–La sought summary judgment on the basis of this exculpatory clause and also argued that it owed no duty to search for hidden traps or dangers on its premises to protect Patron, whom it characterized as a licensee upon the premises. Shangri–La introduced evidentiary material showing Patron was not registered as a guest at Shangri–La, and Shangri–La did not receive any remuneration for the use of its tennis facilities by Patron's tennis league.

¶ 5 The trial court conducted a hearing July 3, 2002, and found as a matter of law: that the document entitled "Missouri Valley Tennis Association Local League Player Waiver," signed by Plaintiff, contains an exculpatory clause which is effective to relieve Defendants of and from any liability to Plaintiff for the injuries and damages alleged in this action.

The trial court then granted Shangri–La's motion for summary judgment. Patron appeals. We reverse and remand for further proceedings.

## ANALYSIS

¶ 6 As set out in *Schmidt v. United States,* 1996 OK 29, ¶¶ 8, 10, 912 P.2d 871, 874,

While these exculpatory promise-based obligations are *generally enforceable,* they are *distasteful* to the law. For a validity test the exculpatory clause must pass a gauntlet of judicially-crafted hurdles: (1) *their language must evidence a clear and unambiguous intent to exonerate the would-be defendant from liability for the sought-to-be-recovered damages;* (2) at the time the contract (containing the clause) was executed there must have been *no vast difference* in bargaining power between the parties; and (3) enforcement of these clauses must never (a) be injurious to public health, public morals or confidence in administration of the law *or* (b) so undermine the security of individual rights vis-a-vis personal safety or private property as to *violate public policy.* (Italics in original) (emphasis added).

Further,

A contractual provision which one party claims excuses it from liability for in futuro tortious acts or omissions must clearly and cogently (1) demonstrate an intent to relieve that person from fault and (2) describe the nature and extent of damages from which that party seeks to be relieved.

■ ¶ 7 In the case in controversy, Patron testified that when she executed the waiver at the beginning of the tennis season, she had no idea she would be playing league tennis at Shangri–La. Also, to her knowledge, this was the first time her Tulsa-area team had played there, though Patron had personally played there before. Indeed, Patron stated she "absolutely [did] not" intend to release Shangri–La when she executed the waiver, because at the time of the execution, the league teams had not even been formed, much less had a schedule or location of games been published. Further, Patron had no idea that Shangri–La would maintain what is arguably a hidden danger on its premises and therefore could not "describe the nature and extent of damages from which" Shangri–La now seeks to be relieved. We hold, as a matter of law, that the general, non-specific release of "any facility" was insufficient under *Schmidt* to relieve Shangri–La from liability.

■ ¶ 8 We are not persuaded by Shangri–La's attempts to distinguish *Schmidt.* Indeed we find *Schmidt's* three-prong analysis to test the validity of an exculpatory contract to be directly on point. While it is true *Schmidt* did not directly rule on an example of an exculpatory contract, it did answer certified federal questions of law as to how this court should analyze such a contract. Using the *Schmidt* criteria, we find

Patron could not contract away Shangri–La's liability, because (1) Patron did not know she would be playing at Shangri–La; (2) the identity of the tortfeasor was not known to her at the time of the contract; (3) there was no intent, and thus no meeting of the minds, to exculpate Shangri–La, and (4) the language of the exculpatory contract is vague and ambiguous.

¶ 9 Nor are we persuaded by Shangri–La's reliance on *Manning v. Brannon*, 1998 OK CIV APP 17, 956 P.2d 156, decided one year after, and relying on, *Schmidt*. In the first instance, Shangri–La's motion inaccurately sets out *Manning's* holding. Shangri–La declares *Manning* to stand for the proposition that Patron's intent to execute a "waiver" is sufficient to relieve Shangri–La of liability. However, *Manning* holds as follows:

> ¶ 7 The Oklahoma Supreme Court has long recognized that exculpatory contracts, i.e., a contract to avoid liability for damages also known as a "waiver" or "release," may be valid and enforceable.... *That is to say, so long as (1) the intent to excuse one party from the consequences of his or her own negligence is expressed in clear, definite and unambiguous language....* (Emphasis added.)

¶ 10 Second, in *Manning,* a divided[2] Court of Civil Appeals Division I held an exculpatory contract signed or initialed by the plaintiff in 14 different places, after watching a video tape wherein an attorney explained in detail the consequences of the document that the plaintiff was about to sign which expressly named the defendant parachute instruction school, and which contained a release of liability, a covenant not to sue, an agreement to indemnify and hold harmless, and a paragraph describing in detail the risks being assumed by the plaintiff, was sufficient evidence of the plaintiff's intent to absolve the school of liability.

¶ 11 In the case at bar, the general, non-specific waiver signed by Patron is completely dissimilar to the detailed, explicit release

in *Manning*. In the instant case, the identity of the possible tortfeasor is unclear, over broad, unnamed, and unknown. Further, the waiver fails to identify the risks being waived, the duration of the waiver, and is arguably ambiguous, given the fact that Patron's signature could be construed as an acknowledgment of the rules of the tennis league, of the waiver of liability, or merely of an indication that she wished to be part of a particular tennis team. We therefore conclude the facts in the case on review are distinguishable from those of *Manning*, and decline Shangri La's invitation to affirm the trial court based upon *Manning*.

## SUMMARY

¶ 12 Because the trial court's order clearly states the sole reason for its grant of summary judgment is the existence of the exculpatory clause which the trial court found as matter of law prevented Patron's recovery, and because we have held such clause to be ineffective as to Shangri–La, we hold the trial court's order must be reversed and the matter remanded to the trial court for further proceedings. The order makes no mention of undisputed material facts, or other reasons that, as a matter of law, would support the grant of summary judgment. Nor do we address the issue of Patron's status as a licensee or invitee, and the respective duties owed to her by Shangri–La, because this was not part of the trial court's stated basis for granting summary judgment.

¶ 13 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

COLBERT, P.J., and RAPP, J., concur.

---

**2.** The dissent in *Manning* noted that the record suggested the defendant parachute school may have recklessly packed plaintiff's parachute, thus creating a jury question. A waiver should not, in the opinion of the dissenter, absolve a defendant from his reckless behavior.