Curran, Dennis J., J.
Tricia Cahalane was seriously injured during a tandem skydiving activity conducted *475 under the auspices of the defendant, Skydive Cape Cod, Inc. This action seeks damages for her injuries from Skydive Cape Cod; its owner, Jimmy Mendonca; her skydiving instructor, Marcus Silva; the airport management company, Cape Cod Flying Circus, Inc.; and Flying Circus’ owner, Timothy Howard, under theories of gross negligence, strict liability, deceit and misrepresentation. All of the defendants have moved for summary judgment on Ms. Cahalane’s claims. They argue, primarily, that Ms. Cahalane voluntarily released them from liability by signing two covenants not to sue before participating in the skydive. The Court agrees.
For this reason, and for reasons discussed below, the defendants’ motions for summary judgment must be ALLOWED.
FACTUAL BACKGROUND
On July 25, 2012, Ms. Cahalane visited the Chat-ham Municipal Airport to participate in a skydive orchestrated by Skydive Cape Cod. Before skydiving, she signed and/or initialed several documents waiving legal action against the defendants in the event of an injury related to the skydive. The crux of these waivers provided that she and her family “assume [ ] the risk of serious injury and/or death and agree never to sue Skydive Cape Cod or any other parties involved.” By signing, she acknowledged that she had “been adequately informed about [the] dangers and risks,” and that she was “sufficiently informed to sign agreements with which [she] willingly [gave] up important legal rights.”
These waivers released Skydive Cape Cod from liability even if the participant was injured by its negligence. Moreover, the waivers precluded any future legal argument that the waivers themselves were unenforceable or against public policy, and provided that any “ambiguities be resolved in favor of Skydive Cape Cod, Inc.”
Not only were Skydive Cape Cod and its employees released from liability under these agreements, so too were the “owners and lessees ... of land upon and from which the parachute jumping and related aircraft operations [were] conducted,” as well as “the owners and operators of the skydiving facility,” and their “officers, directors, agents, servants, employees, shareholders [etc.].” Flying Circus is specifically named in the waiver.
Ms. Cahalane was given the opportunity to purchase a release from these waivers for $750. She declined to do so. She asked an employee of Skydive Cape Cod what this provision meant and was told that “it was just standard waiver language and that nobody ever bought it.” Ms. Cahalane has stated that at the time she was reviewing these contracts, her attention was divided between the waiver terms and an instructional video about skydiving.
During Ms. Cahalane’s skydive, she was attached to Marcus Silva by a harness. As the pair prepared to land, Mr. Silva performed a “hook turn,” a pivot of at least 180 degrees. Hook turns were not prohibited by the United States Parachuting Association at the time of Ms. Cahalane’s skydive, but have since been prohibited. When Ms. Cahalane landed, her legs were straight under her. She had been instructed, just before landing, to lift her legs so as to be in a seated position. Ms. Cahalane claims that a sudden gust of wind sent her legs downward. She fractured both femurs.
Additional relevant material facts may be found below.
SUMMARY JUDGMENT STANDARD
The defendants are entitled to summary judgment if they can demonstrate that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The defendants, as the moving parties, cany the burden of affirmatively demonstrating the absence of a triable issue, and may satisfy their burden either by submitting affirmative evidence that negates an essential element of the plaintiffs case, or by demonstrating that the plaintiff has no reasonable expectation of proving an essential element of her case at trial. Flesner v. Technical Commc’n Corp., 410 Mass. 805, 809 (1991). If the defendants meet this burden, the plaintiff is obliged to set forth specific facts showing that there is a genuine issue for trial if she wishes to survive summary judgment. O’Brion, Russell & Co. v. LeMay, 370 Mass. 243, 245 (1976). The plaintiff may not rest on her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The Court reviews the evidence in the light most favorable to the plaintiff as the nonmoving parly, but does not weigh evidence, assess credibility or find facts. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976).
This action is appropriately considered on the defendants’ motions for summary judgment where their entitlement to such judgment turns on the interpretation of the waivers signed and initialed by Ms. Cahalane. Liability waivers are interpreted as any other contract, Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, and their interpretation is a question of law for the court, unless their language is ambiguous. Lumber Mutual Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). Further, whether the waivers’ terms are ambiguous is for the Court to decide. See Fashion House, Inc. v. K-Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).
ANALYSIS
The Court addresses each of Ms. Cahalane’s theories of liability in the following order: unenforceabilify *476 of the waivers for want of procedural and substantive fairness, gross negligence, and strict liability.
Enforceability of the Waivers
Covenants not to sue are generally enforceable. Cormier v. Central Massachusetts Chapter of the Nat’l Safety Council, 416 Mass. 286, 288 (1993); Minassian v. Ogden Suffolk Downs, 400 Mass. 490, 493 (1987). Only waivers procured by fraud, duress, or deceit, or those which offend public policy, will subvert that general rule. See Sharon v. City of Newton, 437 Mass. 99, 103-04 (2002). Ms. Cahalane asserts that the waivers she signed are unconscionable and unenforceable under both of these exceptions. Unconscio-nability must be determined on a case-by-case basis, and a judicial inquiry must focus on whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party. Waters v. Min Ltd., 412 Mass. 64, 68 (1992). Thus, we center on the point the contract was made, le., when Ms. Cahal-ane signed the waivers. See Piantes v. Pepperidge Farm, Inc., 875 F.Sup. 929, 936 (D.Mass. 1995) (applying Massachusetts law).
First, Ms. Cahalane contends that the liability waivers are unconscionable because the waivers were procured in a “procedurally deficient manner.” Specifically, she has stated that despite making a reservation to jump and paying a deposit one month in advance, she was not provided the waivers until the day of her jump, and was given veiy little time to review it or ask questions. Further, she contends that there was a vast disparity between her bargaining power and that of the defendants, which should invalidate the waiver. She also opines that Skydive Cape Cod represented to her, through advertising materials and in person, that it complied with United States Parachuting Association rules and recommendations, and provided the safest training in the industry. These representations were fraudulent, she claims, because Mr. Silva performed a hook turn and chose to jump when the wind speed suggested it was not safe to do so.[2]
That Ms. Cahalane was given the liability waiver on the day of her jump does not make the liability waivers procedurally unconscionable. See Malecha v. St. Croix Valley Skydiving Club, 392 N.W.2d 727, 730 (Minn.App. 1986) (“Proof [there was] no opportunity to negotiate the terms of the exculpatory agreement is not enough to show a disparity of bargaining power”). She casts her case as one involving an unsophisticated thrill-seeker burdened by the demands of a sophisticated business and its property managers. But even if Ms. Cahalane was not in a position to negotiate the terms of the liability waiver, and would have lost her deposit had she refused to assent to every term of the waiver, the principle of unconscionability is inapplicable here. That principle is reserved to prevent oppression and unfair surprise, not to disturb risk-allocation because of superior bargaining power. Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292 (1980), quoting U.C.C. §2-302, cmt. 1. The plaintiff concedes she was aware before she arrived at Skydive Cape Cod that skydiving was a dangerous activity that could kill or seriously injure her.
That Mr. Silva conducted a hook turn is also immaterial to the plaintiffs claims of misrepresentation. The maneuver was not prohibited at the time Ms. Cahalane had her accident. Even if a factfinder were to determine that performing such a maneuver was negligent, it would not make Skydiving Cape Cod’s representations to Ms. Cahalane fraudulent. The defendants never represented to her that hook turns would not be used. Moreover, the discretion of instructors concerning whether or not it is safe to jump is incorporated into the liability waiver’s assurance to Ms. Cahalane that the experience would be made as safe as possible.
In other words, Ms. Cahalane was aware that even if the employees of Slydive Cape Cod took every precaution in making the jump safe, there was a substantial risk of death or serious injury involved with the activity. The provisions in question were not “buried in fine print,” but were explicit and repeated. Zapatha, 381 Mass, at 67.[3]
The waivers are not unconscionable for want of procedural integrity. The admissible evidence presented does not support a conclusion that Ms. Cahal-ane was defrauded into signing the waivers, or that the differences in the parties’ bargaining power rendered the waivers inherently unfair. Critically, where no admissible evidence before the Court can sustain Ms. Cahalane’s separately-pleaded counts alleging deceit and misrepresentation, those counts fail as against all of the defendants, and the Court need not address those claims separately.
Second, Ms. Cahalane contends that the liability waivers are unconscionable because the terms of the contract themselves are so substantively one-sided. The provisions exculpating the defendants from liability, Ms. Cahalane asserts, are those which “no man in his senses and not under delusion would make.” Waters v. Min, 412 Mass. 64, 66 (1992), quoting Hume v. United States, 132 U.S. 406, 411 (1889).
Substantive unconscionability measures the degree of oppression imposed by the contract term in question. Zapatha, 381 Mass, at 294-95. See also Covich v. Chambers, 8 Mass.App.Ct. 740, 750 n.13 (1979), quoting Campbell Soup Can Co. v. Wentz, 172 F.2d 80, 84 (3d Cir. 1948) (“[A] contract [is] determined unenforceable because unconscionable [sic] when ‘the sum total of its provisions drives too hard a bargain for a court of conscience to assist’"). Courts considering broad and comprehensive liability waivers akin to those at issue in this case have held that no public interest is implicated such that judicial interference is warranted. They have consistently held that private parties are free among themselves to shift a risk elsewhere than where the law would otherwise place *477 it. A survey of liability waivers in the skydiving industry, in particular, reveals that such comprehensive releases are enforceable. See Scrivener v. Sky’s the Limit, 68 F.Sup.2d 277, 280 (S.D.N.Y. 1999); Manning v. Brannon, 956 P.2d 156, 158-59 (Ok.App. 1998); Paralift, Inc. v. Superior Court, 23 Cal.App.4th 748, 756 (1993); Malecha, 392 N.W.2d at 731; Hulsey v. Elsinore Parachute Ctr., 168 Cal.App.3d 333, 343 (1985); Jones v. Dressel, 623 P.2d 370, 376 (Colo. 1981). The Court concurs with these decisions, and holds that the broad release from liability in the waivers signed by Ms. Cahalane are enforceable.[4] Where she was given an opportunity to read and understand the waiver before signing it, she is deemed to have understood it. See Sharon, 437 Mass. at 103. Her failure to read or understand any portion of the waiver alone is insufficient to void that waiver. Id.
Gross Negligence
Although the waivers Ms. Cahalane signed are enforceable, our cases have not gone so far as to say that such waivers may extend to liability for injuries caused by gross negligence. Zavras, 44 Mass.App.Ct. at 18-19. See also Scrivener, 68 F.Sup.2d at 280 (exempting gross negligence claims from exculpatory agreement in the skydiving context). Gross negligence is “substantially and appreciably higher in magnitude” than ordinary negligence. Altman v. Aronson, 231 Mass. 588, 591 (1919). The distinction between ordinary negligence and gross negligence is difficult to draw, but “must be observed, lest all negligence be gradually absorbed into the classification of gross negligence.” Duval v. Duval, 307 Mass. 524, 528 (1940), quoting Quinlivan v. Taylor, 298 Mass. 138, 140 (1937). The defendants’ conduct must be considered as a whole to determine whether Ms. Cahalane has pled sufficient facts and proffered sufficient evidence to support a finding that such conduct evinced “a high degree of culpability and indifference to duty that is the essential characteristic of gross negligence.” Id.
This Court has been hesitant to find gross negligence where the activity involved was inherently dangerous and where even ordinary negligence in such situations carried a substantial risk of injury. See e.g., Powers v. Mukpo, 10 Mass. L. Rptr. 535, *10 (1999) (Botsford, J.) (lessor’s failure to insist horseback riding school lessee’s compliance with statutory licensure requirement not grossly negligent); Brockman v. Sweetheart Cup Co., 2005 WL 1476872, *7 (2005) (Kern, J.) (failure to assure forklift was in compliance with OSHA regulations not grossly negligent); Campbell v. Schwartz, 7 Mass. L. Rptr. 32, *12 (1997) (Lauriat, J.) (accidently hitting decedent with snowmobile which defendant did not have permission to operate not grossly negligent). Although Massachusetts cases have not addressed the types of conduct which would constitute gross negligence in the context of skydiving, those of other courts have considered and rejected the application of gross negligence to a wide array of conduct. See e.g., Wethington v. Swainson, 2015 U.S. Dist. LEXIS 169145, *14-15 n.5 (W.D.Okla. 2015) (provision of inadequate training to skydiving customer, appointment of radio assistance employee with no prior experience, provision of old equipment which malfunctioned, and provision of equipment inappropriate for skill level of skydiving customer insufficient to support a claim for gross negligence); Tiede v. Frontier Skydivers, Inc., 105 A.D.3d 1357, 1359 (N.Y.App. 2013) (failure to properly train skydiving plane pilot and instructors could not support claim for gross negligence); Manning, 956 P.2d at 160 (inadequate training and failure to properly pack skydiving parachute could not support a claim for gross negligence).
It is arguable whether employees of Skydiving Cape Cod chose to jump in less-than-ideal wind conditions, whether Mr. Mendonca failed to confirm that Mr. Silva had the requisite training to conduct a safe tandem jump, and whether the hook turn that he performed was a less-safe landing maneuver among available alternatives. However, even were this conduct affirmatively demonstrated, none of it smacks of “deliberate inattention,” “impatience of reasonable restraint,” or “persistence in a palpably negligent course of conduct over an appreciable period of time,” the hallmarks of gross negligence, Lynch v. Springfield Safe Deposit & Trust Co., 294 Mass. 170, 172 (1936), but instead sounds in the types of ordinary negligence described in these cases. See e.g., Wethington, supra, where not even several alleged negligent acts, taken together, were sufficient to warrant a “gross” label. One other hallmark, “voluntarily incurring [an] obvious risk,” is also absent in the sense that the tandem jump was already substantially risky. Id. The defendants’ conduct did not make it appreciably riskier than it already was, and Ms. Cahalane acknowledged knowing those substantial risks and assumed them.
Strict Liability
Finally, Ms. Cahalane argues that the nature of skydiving subjects the defendants to strict liability for damages she incurred as a result of her participation in what she characterizes as an “abnormally dangerous activity.” Those who carry on such activities are subject to liability for harm resulting from that activity, even where the utmost care has been exercised to prevent that harm, Ainsworth v. Lakin, 180 Mass. 397, 399 (1902), or where an exculpatory agreement purports to bar an action based on strict liability. See Bolesii v. Sun Ergoline, Inc., 223 P.3d 724, 727 (Colo. 2010) (an exculpatory clause cannot bar an action based on strict liability, collecting cases). Whether an activity is subject to strict liability is a question for the Court. The Clark-Aiken Co. v. Cromwell-Wright Co., Inc., 367 Mass. 70, 91 (1975). The nature of an activity should not, in and of itself, determine whether it is “abnormally dangerous.” Instead, the Court focuses on whether the risk involved is so unusual and ex *478 traordinary as to justify the imposition of strict liability. Id,, at 89.
There are no reported cases in Massachusetts that have imposed strict liability on any defendant for operating a skydiving facility. In Hulsey, supra, the California Court of Appeals held that skydiving “hardly falls within . . . the definition” of an “ultrahazardous activity,” after considering numerous factors set out in California case law, many of which also are set forth in the Restatement (Second) of Torts §520. These are: (1) the extent to which the activity involves a high risk of harm; (2) the ability to eliminate a high degree of risk by the exercise of reasonable care; and (3) the extent to which the activity is not a matter of common usage. The Hulsey court determined that because parachutists can direct their paths of travel and routinely land in small, targeted areas, and because skydiving is “far from [an] uncommon” activity, imposition of strict liability would be inappropriate. Hulsey, 168 Cal.App.3d at 345-46. The Court concurs with this reasoning and finds that, as a matter of law, the operation and management of a skydiving facility does not subject the defendants to strict liability for the injuries Ms. Cahalane sustained as a result of participating in a tandem skydive. See also Lowry v. Cochran, 305 Ga.App. 240, 244 (2010) (declining to apply strict liability to skydiving activity).
CONCLUSION AND ORDER
For these reasons, the defendants’ motion for summary judgment on all counts of Ms. Cahalane’s complaint must be ALLOWED. Furthermore, the defendants’ counterclaims for indemnification of litigation costs and other damages must also be ALLOWED.[5]

 An affidavit by Christopher Siderwicz, the airport manager at the Marston Mills airport, claims that the wind conditions on the day of Ms. Cahalane’s accident made it unsafe for her to jump. The Court agrees with the defendants that consideration of this affidavit would be unfair to them, where they requested information about Ms. Cahalane’s communications with—and documents related to—Mr. Siderwicz in June 2015. The affidavit was responsive to the defendants’ document requests, but was not produced until the summary judgment stage. Further, Mr. Siderwicz’s affidavit makes claims about the propriety of jumping on July 25, 2012 at the Chatham Municipal Airport. However, he was not at that location on that date, and thus does not have the basis of knowledge to testify about whether it was prudent to jump. That portion of the affidavit is irrelevant.

 With respect to Flying Circus and Howard, Ms. Cahalane concedes that neither made any representations to her about her skydiving activities with Skydive Cape Cod. No argument as to fraudulent inducement into the liability waivers lies as to these defendants. Flying Circus did provide a link to Skydive Cape Cod’s website on its own website, but this link is not a representation about Skydive Cape Cod’s qualifications or reputation for safety.

Ms. Cahalane is correct that the provisions in the liability waiver which might be interpreted to release the defendants from liability for injuries caused by their gross negligence are void as a matter of public policy. See Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 18-19 (1997). So too, are the provisions which waive any public policy argument concerning the enforceability of other provisions in the waiver. See Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 378 (1990) (waivers which frustrate public policy are unenforceable). The enforceability of these provisions is immaterial, however, where the Court finds the broad release from liability enforceable as a matter of public policy and where, as discussed below, Ms. Cahalane has in any event not presented sufficient evidence to support a claim against the defendants for gross negligence.

 The waivers signed by Ms. Cahalane state that she agreed to indemnify the defendants “from all claims, judgments and costs ... for any expenses whatsoever incurred in connection with any action brought by myself or brought on my behalfl.]” By signing, Ms. Cahalane specifically agreed that, if she or those on her behalf filed suit against the defendants, those defendants would be entitled “to recover, in addition to any other damages which may be incurred, reasonable attorneys fees and costs incurred in defense” of her lawsuit. Given that fact, however, the defendants, engaged in a commercial venture that seeks customers, may wish to consider the issue of the enforcement of this provision. If the defendants insist on its enforcement, they should direct any motion in this regard to the new session judge now presiding in Middlesex Civil Session “H,” since my 90-day rotation assignment to that session has concluded.