Elizabeth M. SCHMIDT, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 85545.

Supreme Court of Oklahoma.

Feb. 27, 1996.

Alan D. Rosenbaum, Lawton, Reggie N. Whitten, Douglas A. Terry, Mills & Whitten, Oklahoma City, for Plaintiff.

Patrick M. Ryan, United States Attorney, Ronny D. Pyle, Assistant United States Attorney, Western District of Oklahoma, for Defendant.

OPALA, Justice.

The United States District Court for the Western District of Oklahoma [certifying court] certified the following questions pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq.:

"1. Whether, under Oklahoma law, a contractual exculpatory clause for personal injury is valid and enforceable?

2. Whether, under Oklahoma law, the exculpatory provisions contained in the Rental Riding Agreement are valid and enforceable and operate to bar the plaintiff's negligence and negligent entrustment claims?"

 We respond to the first question in the *affirmative*. We answer the second with a *qualifying* affirmative by noting that it applies *if* the certifying court finds that three preconditions to the clause's enforcement are met: (1) the exculpatory clause's language *clearly, definitely and unambiguously* displays an intent to insulate *the United States* from the *type of liability* the plaintiff seeks to impose; (2) *no disparity of bargaining power* existed between the two parties to the agreement containing the clause at the time it was executed; and (3) its effect *would not violate public policy.* We *note* that exculpatory clauses cannot relieve one from liability for fraud, willful injury, gross negligence or violation of the law.[1]

I

## ANATOMY OF THE FEDERAL LITIGATION [2]

Elizabeth M. Schmidt [plaintiff or Schmidt] went to the Artillery Hunt Riding Stables [Stables] at Fort Sill, Oklahoma[3] to engage in recreational horseback riding. Before participating in this activity she executed a Rental Riding Agreement [contract]. The contract contained the following clause [exculpatory clause or clause]:

"In consideration for being allowed to participate in Horse Rental, I hereby release the Artillery Hunt Center and its employees and/or ride leaders ... and the United States Government from *any liabilities or claims* arising from my participation. I agree that I will never prosecute or in any way aid in prosecuting any demand, claim or suit against the United States Government for *any loss, damage or injury to my person or property* that may occur from *any cause whatsoever* as a result of taking part in this activity." [Emphasis supplied.]

Schmidt claims that, during the ride, a "ride leader" employed by the Stables negligently rode up behind her, frightened her horse and caused it to throw her to the ground, then fall on and injure her.

---

1. *See infra* notes *8* and *15.*

2. The material accompanying the certified questions consists of the parties' pleadings and motions filed in the certifying court. The factual recitals in the anatomy of the federal litigation were gleaned from this material and from the briefs submitted to this court.

3. The Stables are admittedly an instrumentality of the U.S. Army.

Schmidt brought a negligent tort complaint against the United States [4] alleging that the latter (1) is liable *vicariously* for the ride leader's negligence and (2) is culpable for *its own negligence* in selecting and keeping an unfit ride leader.[5] By its summary judgment motion the United States interposed the exculpatory clause, by which it sought to defeat Schmidt's claim.

## II

### THE NATURE OF THIS COURT'S FUNCTION WHEN ANSWERING QUESTIONS FROM A FEDERAL COURT

While the actionability of state-law claims identified in the submitted questions may be tested when answering the queries posed, it is not this court's province to intrude (by the responses to be given) upon the federal

court's decision-making process. Because this case is not before us *for decision*, we refrain, as we must, from applying the declared state-law responses to the facts elicited or to be determined in the federal-court litigation (whether made by evidence adduced at trial or by acceptable probative substitutes, called "evidentiary materials", for use in the summary adjudication process).[6] The task of analyzing the impact of today's answers must be and hence is deferred to the certifying court.

## III

### THE PARAMETERS OF THE CLAUSE'S ENFORCE- ABILITY

■■■ By entering into an exculpatory agreement of the type dealt with here [7] the promisor *assumes the risks* that are waived.[8]

---

4. Schmidt's action invokes the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671 et seq. By the FTCA's terms the United States' liability is measured according to the law of the state in which the wrongful act occurred. 28 U.S.C. § 2674.

5. Schmidt charges the United States with *actual notice* of the employee's unfitness to lead the ride.

6. *Brown v. Ford*, Okl., 905 P.2d 223, 226 n. 3 (1995); *Bonner v. Oklahoma Rock Corp.*, Okl., 863 P.2d 1176, 1178 n. 3 (1993); *Shebester v. Triple Crown Insurers*, Okl., 826 P.2d 603, 606 n. 4 (1992).

7. For a discussion of the difference between a contract clause *totally exempting* one from culpability and one which merely *limits the financial extent* of that liability, see *Elsken v. Network Multi-Family Sec. Corp.*, Okl., 838 P.2d 1007, 1008 (1992); *Fretwell v. Protection Alarm Co.*, Okl., 764 P.2d 149, 151 (1988). In both of those cases a burglar alarm company sought to limit its liability for loss due to theft of customers' property via a *liquidated damages* provision. The propriety of similar liability-*limiting* contract clauses is subject to an analysis *grounded in contract law* that lies outside the realm of tort jurisprudence. *See* MacNeil, *Power of Contract and Agreed Remedies*, 47 CORNELL L. Q. 495 (1962).

8. *Express assumption of risk* occurs in those cases where the plaintiff *expressly contracts* with another not to sue for any *future* injuries which may be caused by that person's negligence. *Thomas v. Holliday* by and through *Holliday*,

Okl., 764 P.2d 165, 168 n. 8 (1988); *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1129 (La. 1988); *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780, 783 (1983). The terms of RE- STATEMENT (SECOND) OF TORTS § 496B (1965) provide:

"A plaintiff who by contract or otherwise *expressly agrees to accept a risk of harm* arising from the defendant's negligent or reckless conduct *cannot recover for such harm*, unless the agreement is *invalid as contrary to public policy*." [Emphasis added.]

For a discussion of the jurisprudential requisites for determining whether an exculpatory contract *violates public policy*, see *infra* Part IIIC. *See also in this connection* V. SCHWARTZ, COMPARATIVE NEGLIGENCE § 9.1 at 154 (1974). Express consent, which might also be called "waiver" or "release", will usually bar recovery by the plaintiff unless there is a statute or established public policy against it. *Murray, supra* at 1129. The two statutory provisions cited by Schmidt *are inapposite here*. The terms of the *first*, 15 O.S. 1991 § 212, provide:

"All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own *fraud*, or *willful injury* to the person or property of another or *violation of the law*, whether willful or negligent, are against the public policy of the law." [Emphasis added.]

This section forbids agreements relieving one from liability for *fraud, willful injury or violation of the law*. Its terms cannot be read to embrace contracts affecting liability for *simple negligence*. We assume—for want of contrary notice from the federal-court record—that in this case there is no fraudulent or willful conduct.

While these exculpatory promise-based obligations are *generally enforceable,*[9] they are *distasteful* to the law.[10] For a validity test the exculpatory clause must pass a gauntlet of judicially-crafted hurdles: (1) their language must evidence a *clear and unambiguous* intent to exonerate the would-be defendant[11] from liability for the sought-to-be-recovered damages;[12] (2) at the time the contract (containing the clause) was executed there must have been *no vast difference* in bargaining power between the parties;[13] and (3) enforcement of these clauses must never (a) be injurious to public health, public morals or confidence in administration of the law *or* (b) so undermine the security of individual rights vis-à-vis personal safety or private property as to *violate public policy.*[14]

The clause will *never* avail to relieve a party from liability for intentional, willful or fraudulent acts or gross, wanton negligence.[15]

### A. Clear and Unambiguous Description of Parties and Damages

■ A contractual provision which one party claims excuses it from liability for *in futuro* tortious acts or omissions must clearly

> The terms of the *second* section, 15 O.S.1991 § 212.1, provide:
> "Any *notice* given by a business entity which provides services or facilities for profit to the general public and which seeks to exempt the business entity from liability for personal injury caused by or resulting from any acts of negligence on its part or on the part of its servants or employees, shall be deemed void as against public policy and wholly unenforceable." [Emphasis added.]
> This section's terms apply to promises *imposed* without the promisor's adequate knowledge through explanation or *sans* consideration. That is not the case here because the exculpatory contract in suit *clearly* amounts to more than a posted notice.

and cogently (1) demonstrate an intent to relieve *that person* from fault and (2) describe the nature and extent of damages from which that party seeks to be relieved. This is so not only when one assesses a party's *direct* liability for negligence, *but also* when assaying whether the agreement's terms embrace acts of an *agent or servant* of that party. In short, both the identity of the tortfeasor to be released and the nature of the wrongful act—for which liability is sought to be imposed—must have been foreseen by, and fall fairly *within the contemplation of,* the parties.[16] The clause must also identify the type and extent of damages covered—including those to occur *in futuro.*[17]

### B. Bargaining Power's Parity Level

Courts consider two factors when called upon to ascertain the equality of the parties' bargaining power, vis-à-vis each other, in the setting of a promissory risk assumption: (1) the importance of the subject matter to the physical or economic well-being of the party agreeing to the release and (2) the amount of free choice that party could have exercised when seeking alternate services.[18]

**9.** *Wolf v. Ford,* 335 Md. 525, 644 A.2d 522, 525 (1994); *Colgan v. Agway, Inc.,* 150 Vt. 373, 553 A.2d 143, 145 (1988); *Harris v. Walker,* 119 Ill.2d 542, 116 Ill.Dec. 702, 704, 519 N.E.2d 917, 919 (1988); *Rawlings v. Layne & Bowler Pump Company,* 93 Idaho 496, 465 P.2d 107, 110 (1970); *Henry v. Mansfield Beauty Academy, Inc.,* 353 Mass. 507, 233 N.E.2d 22, 24 (1968); *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 963, 177 N.E.2d 925, 926 (1961).

**10.** *Gulf, C. & S.F. Ry. Co. v. Anderson,* 120 Okl. 60, 250 P. 500, 502 (1926).

**11.** *Colgan, supra* note 9, 553 A.2d at 145; *Jones v. Dressel,* 623 P.2d 370, 378 (Colo.1981); *Anderson, supra* note 10, 250 P. at 502.

**12.** *Anderson, supra* note 10 at 502.

**13.** *Salt River Project Agr. v. Westinghouse Elec.,* 143 Ariz. 368, 383, 694 P.2d 198, 213 (1985); *Elsken, supra* note 7 at 1010–1111.

**14.** *Shepard v. Farmers Insurance Co.,* Okl., 678 P.2d 250, 251 (1984). *See also Thomas, supra* note 8 at 168 n. 7; *Fisk v. Bullard,* 205 Okl. 502, 239 P.2d 424, 427 (1951); *Anderson, supra* note 10 at 502. *See also in this connection Harris, supra* note 9 at 909; *Salt River, supra* note 13 at 383, 694 P.2d at 213; *Belger Cartage Serv., Inc., v. Holland Const. Co.,* 224 Kan. 320, 582 P.2d 1111, 1119 (1978); *Ciofalo, supra* note 9, 220 N.Y.S.2d at 963, 177 N.E.2d at 926.

**15.** *Wolf, supra* note 9, 644 A.2d at 528; *Jones, supra* note 11 at 376; *Manhattan Co. v. Goldberg,* 38 A.2d 172, 174 (D.C.1944).

**16.** *Anderson, supra* note 10 at 502.

**17.** *Anderson, supra* note 10 at 502.

**18.** *Goldberg, supra* note 15 at 174–175. *See Trumbower v. Sports Car Club of America, Inc.,* 428 F.Supp. 1113, 1117 (W.D.Okla.1976).

## C. The Element Whose Presence Makes the Exculpation Not Violative of Public Policy [19]

■ While courts *may declare void* those portions of private contracts which contradict public policy,[20] they must do so *only with great caution.*[21] Two classes of exculpating agreements may be said to violate public policy: (1) those which—if enforced—patently would tend to injure public morals, public health or confidence in the administration of the law and (2) those which would destroy the security of individuals' rights to personal safety or private property.[22]

## IV

## SUMMARY

National jurisprudence teaches that parties *may* contractually allocate the risk of future harm. The exercise of this power is conditional; any agreement having as its purpose the *unequivocal* exoneration of one party from negligent tort liability of another must identify *both* the putative tortfeasor *and* the category of recovery from which that actor would be relieved. The parties must have bargained for their exchange on a level playing field—the level to be measured by the seriousness of the contract's subject matter and the options available to the person giving up the right to sue. If the clause is to pass the test's muster, the assumed obligation *cannot* be deemed to have brought about a result perceived as harmful to the principles of "public policy".[23]

The validity of the Schmidt/Stables exculpatory clause in suit depends on the outcome of the fact-finding investigation to be conducted in the certifying court.[24] If—under the test we announce today—that court should determine that *any single requirement* for the clause's enforceability has not been met, its decision could not uphold the contract and exonerate the United States.

## CERTIFIED QUESTIONS ANSWERED.

KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., concurs in part and dissents in part.

---

**19.** In the context of an exculpatory clause's validity, *"public policy"* means *that which inhibits anything injurious to the good of all.* The term is applied here in a sense *broader* than that used when scrutinizing for conformity to "public policy" wrongful-termination claims pressed by discharged at-will employees. *Cameron & Henderson v. Franks*, 199 Okl. 143, 184 P.2d 965, 972 (1947). For cases that deal with claims by discharged at-will employees see *Groce v. Foster*, Okl., 880 P.2d 902, 904 (1994); *Gilmore v. Enogex, Inc.*, Okl., 878 P.2d 360, 364 (1994); *Burk v. K–Mart Corp.*, Okl., 770 P.2d 24, 28–29 (1989).

**20.** *Hargrave v. Canadian Valley Elec. Co-op.*, Okl., 792 P.2d 50, 59 (1990).

**21.** *Shepard v. Farmers Insurance Co.*, Okl., 678 P.2d 250, 251 (1984); *Johnston v. J.R. Watkins Co.*, 195 Okl. 341, 157 P.2d 755, 757 (1945); *Camp v. Black Gold Petroleum Co.*, 189 Okl. 692, 119 P.2d 815, 817–818 (1941).

**22.** *Shepard, supra* note 21 at 251; *Anderson v. Reed*, 133 Okl. 23, 270 P. 854, 856 (1928). An example of an exculpatory clause injurious to *public* health is afforded by an agreement exonerating a *common carrier* from liability for negligence. *See Pine Belt Lumber Co. v. Riggs*, 80 Okl. 28, 193 P. 990, 996–997 (1920).

**23.** *See supra* note 19.

**24.** Promise-based obligations of the type dealt with here are treated as the promisor's risk assumption. *See supra* Part III. The terms of Art. 23, § 6, Okl. Const., provide in pertinent part:

"The defense of ... *assumption of risk* shall, in *all cases whatsoever*, be a question of fact, and shall, at all times, be left to the jury." [Emphasis added.]

The terms of Art. 23, § 8, Okl. Const., provide:

"Any provision of a *contract, express* or implied, made by any person, by which any of the *benefits of this constitution is sought to be waived*, shall be null and void." [Emphasis added.]

Today we merely define the parameters of an exculpating clause's enforceability. Whether, as applied to this case, the *provision presents a disputed law question or also a disputed fact question is to be decided by the certifying court.*