FILED
United States Court of Appeals
Tenth Circuit

**March 6, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ARNOLD OIL PROPERTIES LLC,

Plaintiff–Appellee,

v.

SCHLUMBERGER TECHNOLOGY
CORPORATION,

Defendant–Appellant.

No. 11-6053

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:08-CV-01361-D)

---

Toby M. McKinstry of Tomlinson Rust McKinstry Grable, Oklahoma City,
Oklahoma, for Defendant–Appellant.

Thomas G. Wolfe (Catherine L. Campbell with him on the brief) of Phillips
Murrah P.C., Oklahoma City, Oklahoma, for Plaintiff–Appellee.

---

Before **LUCERO**, **McKAY,** and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This is a dispute concerning cementing services provided on an oil well.

Plaintiff Arnold Oil Properties, LLC, ("Arnold") hired Defendant Schlumberger

Technology Corp. ("Schlumberger") to perform a specialized cement job on its

deep-zone gas well. After Schlumberger poured too much cement into the well, Arnold sued for breach of contract and negligence. The district court concluded as a matter of law that an alleged exculpatory provision in the parties' contract was in fact an indemnification provision and therefore did not bar Arnold's recovery. After a jury found the parties were in unequal bargaining positions, the district court denied Schlumberger's request to enforce the contractual limitation-of-liability provision. We affirm.

## BACKGROUND

In 2007, Arnold needed cement poured into its wellhole in Custer County, Oklahoma, in order to reach a certain level for drilling. Out of three companies able to provide the specialized services, Arnold chose Schlumberger to complete the job. In May 2007, an Arnold engineer, Steve Kester, contacted Schlumberger to request the cement services. Mr. Kester provided Schlumberger with Arnold's target depth of 11,900 feet, as well as the hole volume and other measurements needed to calculate how much cement would be necessary. Felipe Gemini, a Schlumberger engineer, emailed Mr. Kester a job proposal consistent with Arnold's 11,900 foot target. However, Mr. Gemini assigned the job to Ron Acklin, a salesman for Schlumberger, who told Mr. Kester to disregard the first emailed proposal. Mr. Kester did not open Mr. Gemini's email. Mr. Kester gave Mr. Acklin the same measurements he had given previously, and Mr. Acklin prepared a new proposal, which reflected a cement top of 11,900 feet. Mr. Kester

-2-

accepted the proposal and arranged for completion of the job on June 2, 2007.

What Mr. Kester did not realize was that while the second proposal indicated the cement top would be 11,900 feet, the amount of cement Mr. Acklin calculated for the job would actually result in a much higher cement top. The problem arose because of disparate meanings for the hole volume measurement. "'Hole volume' (synonymous with the terms 'open hole volume' or 'open hole fill') is the volume of the hole without pipe in it and is different and larger than "annular volume" which is the hole volume less the volume of the pipe . . . ." (Appellant's App. at 53.) "Because cement is placed in the hole between the pipe and the earth, the annular volume is used to calculate the volume of cement required." (*Id.*) While Mr. Gemini's proposal used annular volume, Mr. Acklin's proposal used hole volume to calculate the amount of cement needed. Thus, Schlumberger used more cement than was actually needed. But because Mr. Acklin's proposal showed a cement top at 11,900 feet and Mr. Kester had not read the first proposal, Mr. Kester did not question Mr. Acklin's calculation of the amount of cement needed.

Schlumberger completed the job on June 2, 2007, after which Mr. Kester signed Schlumberger's contract using an electronic signature pad. The terms of the contract were not visible on the electronic signature pad. The contract provided, in part, the following:

9.      Indemnities

(a) Personnel and Property[.]

. . . . .

2. Customer shall be responsible for and hereby agrees to protect, defend, indemnify and hold harmless Schlumberger Group and its insurers from and against all claims arising out of or in connection with damage to or loss or destruction of property . . . arising out of or in connection with the contract or the services provided hereunder.

(b) Special Indemnity. Notwithstanding anything to the contrary herein, customer assumes all liability for and agrees to protect, defend, indemnify, and hold Schlumberger Group and its insurers harmless from and against all claims arising out of or in connection herewith for . . . (III) property damage or loss that results from reservoir or underground damage, including loss of oil, gas, other mineral substances, or water or the well bore itself . . . (V) damage to property owned by, in the possession of, or leased by customer, and/or well owner . . . .

(c) Application of Indemnities. The assumption of liability and indemnities in paragraphs (a) and (b) above shall apply to any loss, damage . . . or claim arising out of or in connection with this contract or the services provided hereunder, without regard to the cause(s) thereof including, without limitation, . . . the sole, joint, concurrent or gross, active or passive, negligence or other fault of the indemnitee or its contractors or subcontractors or its or their employees, agents, representatives or invitees.

(*Id*. at 31 (emphasis and capitalization omitted).) The contract also sets forth a separate limitation of liability clause:

12. Limitation of Liability. Notwithstanding anything to the contrary herein, except as provided under Paragraph 9.(a)1, Schlumberger's liability arising

-4-

> from or in connection with this Contract (whether for indemnity, breach of contract, negligence, misrepresentation, or otherwise) shall not in any circumstances exceed the full value of the consideration owed to Schlumberger under this Contract.

(*Id*. (emphasis omitted).)  The cost of the work performed totaled $40,893.37.

The cement top poured by Schlumberger actually rose to 10,595 feet, higher than the requested 11,900 foot target.  At this level, the cement covered a zone in the well that Arnold had identified for production.  Arnold incurred almost one million dollars of additional expenses as a result of sidetracking around the cement to reach the now-covered zone.  To recoup the additional expense, Arnold filed this action against Schlumberger for negligence, gross negligence, and breach of contract.  Schlumberger moved for summary judgment, arguing the contract precluded its liability or, alternatively, the contract limited its liability to the cost of the work performed.  After concluding the contract was clear and unambiguous, and therefore the construction of the contract was a matter of law for the court to decide, the district court held the indemnity provision in the contract merely operated to indemnify the parties against third-party claims and was not exculpatory.  "Nothing in the instant indemnity provision—paragraph 9 of the contract—suggests that the parties intended it to operate as an exculpatory release as opposed to an agreement to indemnify with respect to claims of third parties." (*Id*. at 151.)  Accordingly, the district court

-5-

denied summary judgment. The district court also held that fact issues remained as to the parties' relative bargaining positions and therefore denied summary judgment on the enforceability of the limitation-of-liability provision.

The case proceeded to trial, and the jury returned a verdict finding the parties were equally negligent and Schlumberger had breached its contract with Arnold. The jury awarded $350,000 in damages to Arnold. The jury also determined Schlumberger was not grossly negligent and the parties were in an unequal bargaining position. Schlumberger renewed its motion for judgment as a matter of law seeking enforcement of the limitation-of-liability clause. The district court denied the Rule 50(b) motion, holding "the evidence admitted at trial was sufficient to permit the jury reasonably to find that [Arnold] and [Schlumberger] held positions of unequal bargaining power at the time of contracting." (*Id*. at 223-24.) Schlumberger now appeals the district court's denial of summary judgment and its denial of judgment as a matter of law.

## DISCUSSION

We review the denial of summary judgment de novo and apply the same standards as the district court. *Yaffe Cos. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007). Summary judgment is appropriate "if there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Our review, however, is only appropriate where the motion for summary judgment presented a legal question." *Kelley v. City of*

*Albuquerque*, 542 F.3d 802, 820 (10th Cir. 2008); *see also Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841 (10th Cir. 1994) ("A party who properly raises an issue of law before the case goes to the jury need not include the issue in a motion for a directed verdict in order to preserve the question on appeal." (quotation marks omitted)). Additionally, the determination as to whether a contract is ambiguous and the construction of an unambiguous contract are legal questions for the court. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003).[1]

Further, "[w]e review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court." *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1216 (10th Cir. 2002) (quotation marks omitted). We grant judgment as a matter of law "if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law." *Id*. (quotation marks and alterations omitted). "[T]he controlling question is whether the plaintiff has arguably proven a legally sufficient claim." *Id*. at 1216-17 (quotation marks omitted).

Schlumberger first argues the district court misconstrued the indemnity and hold-harmless provisions in the parties' contract based on its mistaken belief that the parties did not intend to bar claims by Arnold against Schlumberger. While

---

[1] Oklahoma law governs substantive issues in this diversity case. *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108-09 (10th Cir. 2002) ("A federal court sitting in diversity applies the substantive law of the forum state.").

the terms indemnity and exculpatory are often used interchangeably, they are, in fact, different. "An exculpatory clause releases in advance the second party for any harm the second party might cause the first party after the contract is entered. [An] indemnification clause . . . protects against claims made by parties outside the contract." *Federated Rural Elec. Ins. Corp. v. Williams*, 2002 WL 31041863, at *4 (Okla. Civ. App. 2002). Schlumberger argues the clear language of the contract required Arnold to exculpate and hold Schlumberger harmless "from and against all claims arising out of or in connection with damage to or loss or destruction of property . . . arising out of or in connection with the contract or the services provided hereunder." (Appellant's App. at 31.)

While we question whether these provisions, as a matter of law, really did exclude exculpatory rights, *see United States v. Hardage*, 985 F.2d 1427, 1435 (10th Cir. 1993) ("[O]ur analysis of Oklahoma law leads us to conclude that the term 'resulting from' is the type of all-inclusive and unambiguous language sufficient to exculpate" a party from its own negligence or strict liability.), we need not decide the issue. Under Oklahoma law, courts may enforce contractual exculpatory clauses only if they meet three conditions:

> (1) their language must evidence a *clear and unambiguous* intent to exonerate the would-be defendant from liability for the sought-to-be-recovered damages;

> (2) at the time the contract (containing the clause) was executed there must have been *no vast difference* in bargaining power between parties; and

-8-

(3) enforcement of these clauses must never (a) be injurious to public health, public morals or confidence in administration of the law *or* (b) so undermine the security of individual rights vis-a-vis personal safety or private property as to *violate public policy*.

*Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996). In this case, the jury ultimately found Arnold and Schlumberger were in unequal bargaining positions.[2] While Schlumberger has appealed that finding, as discussed below, we agree with the district court that the testimony at trial sufficiently supported the jury's finding. Thus, even if we were to hold the language of the parties' contract operates to exculpate Schlumberger from any and all liability, because of the parties' unequal bargaining position, we would have to find the exculpatory provision unenforceable under Oklahoma law. Either way, the contract cannot exculpate Schlumberger from its liability in this case.[3]

Schlumberger also argues the district court should have granted its motion

---

[2] In theory, there may be some difference between a "vast difference in bargaining power," as described in *Schmidt*, and merely "unequal" bargaining power, as the jury found here. Schlumberger, however, does not argue that there is any significant difference. To the contrary, Schlumberger, relying on *Schmidt*, requested the district court to instruct the jury that limitation-of-liability agreements "are enforceable if there was no unequal bargaining position between the parties," and the court did so. Thus, we assume, without deciding, that a jury finding of "unequal" bargaining power is sufficient to render a contract unenforceable under *Schmidt*.

[3] And in fact, "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Lott*, 310 F.3d 1231, 1242 n.7 (10th Cir. 2002) (quotation marks omitted).

for judgment as a matter of law to enforce the limitation-of-liability provision limiting Arnold's recovery to the cost of services rendered—$40,893.37. Under Oklahoma law, courts may enforce contractual provisions limiting a party's liability for ordinary negligence if the parties have equal bargaining power. *Elsken v. Network Multi-Family Sec. Corp.*, 838 P.2d 1007, 1009-11 (Okla. 1992). Oklahoma courts consider two factors in determining parties' relative bargaining power: "(1) the importance of the subject matter to the physical or economic well-being of the party agreeing to the release, and (2) the amount of free choice that party could have exercised when seeking alternate services." *Schmidt*, 912 P.2d at 874.

Schlumberger argues the jury heard no evidence relating to Arnold and Schlumberger's relative bargaining power because Arnold only offered evidence relating to other companies' contracts. Specifically, Arnold's chief operating officer engineer testified that other companies' contracts have "onerous contract terms" and salespeople at other companies had told him service contracts are offered on a "take it or leave it" basis. (Appellant's App. at 272-73.) Schlumberger argues Arnold did not testify that it ever requested a contract modification from Schlumberger, and therefore there is no evidence Schlumberger would have denied such a request. Schlumberger also argues the evidence showed Arnold could have hired at least two other companies to perform the same work, and therefore there was no unequal bargaining position.

-10-

"In reviewing the denial of a Rule 50 motion, we determine only whether the jury verdict is supported by substantial evidence when the record is viewed most favorably to the prevailing party." *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002). Substantial evidence is less than the weight of the evidence. Instead, it "is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id*. (quotation marks omitted).

In this case, the evidence at trial showed: (1) the 11,900 foot cement top was "critical" to Arnold's production from the well (Appellant's App. at 236); (2) three companies were able to perform the work Arnold needed; (3) all three companies used standardized contracts with similar "onerous" terms regarding liability (*Id*. at 272); (4) in Arnold's chief operating officer's experience, the terms were non-negotiable; and (5) a Schlumberger employee who has performed hundreds of cement jobs has never been asked to modify the terms of the contract, nor does he have the authority to do so. Arnold also offered evidence that a comparable company's contract allowed for modification of the liability provisions on its face *if* first authorized by an executive officer. Arnold's witnesses doubted this could ever happen, and the company prohibited field personnel from making such modifications. Further, Schlumberger's contract contained no such language, a fact Arnold argues supports the jury's finding that

the parties were in unequal bargaining positions.

We hold the evidence offered at trial was sufficient for the jury to conclude Arnold did not have free choice in seeking alternate services, and therefore the parties were in unequal bargaining positions. As the district court observed, "a reasonable inference to be drawn from the trial evidence was that the nonnegotiable nature of the form contract was so well known that [Arnold] did not see the written contract, and [Schlumberger] did not ask [Arnold] to sign it, until the work had already been completed." (Appellant's App. at 224.) As such, we cannot enforce the limited liability provision. The district court was correct to deny Schlumberger's motion for judgment as a matter of law.

Schlumberger contends our decision in *Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470, 1475 (10th Cir. 1995), held that evidence of a "take-it-or-leave-it" contract is insufficient to determine relative bargaining position. But in *Elsken*, the plaintiff *only* offered evidence the contract was "take-it-or-leave-it." Thus, we held, "[f]rom these assertions alone a fact finder would be unable to determine that [the plaintiff] was in a bargaining position that would render the [contract] unenforceable." *Id.* And in fact, in *Elsken*, we noted "[t]he [contract] reveals that [the plaintiff] could have bargained for a higher limit on liability. This undercuts [the plaintiff's] argument that the contract was absolutely unnegotiable." *Id.* at 1475 n.1. Thus, we upheld the dismissal of the plaintiff's claims in *Elsken* because she failed to present facts creating a genuine issue

-12-

relating to her unequal bargaining position. In this case, though, a jury found unequal bargaining position between the parties. The evidence supported such a finding, and we will not disturb it.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.