IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2025 Session

## CYNTHIA TORRES v. YMCA FOUNDATION OF MIDDLE TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. 23CV-315   Deanna Bell Johnson, Judge**

_____

**No. M2024-00720-COA-R3-CV**

_____

The appeal concerns the scope and enforceability of a liability waiver. The trial court determined the liability waiver applied to the plaintiff's claims of personal injury and granted the defendant summary judgment. We agree and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and ANDY D. BENNETT, J., joined.

Brett T. Windrow, Nashville, Tennessee, for the appellant, Cynthia Torres.

Richard C. Mangelsdorf, Nashville, Tennessee, for the appellee, Young Men's Christian Association of Middle Tennessee.

**MEMORANDUM OPINION**[1]

**I.**

A shower seat in a fitness center came unmoored from the wall while in use by Cynthia Torres, causing her serious injury. The Young Men's Christian Association of Middle Tennessee operated the fitness center. When Ms. Torres sued alleging negligence,

---

[1] Under the rules of this Court, as a memorandum opinion, this opinion may not be published, "cited[,] or relied on for any reason in any unrelated case." TENN. CT. APP. R. 10.

the YMCA[2] raised a liability waiver as a defense. The liability waiver, found in Ms. Torres's application for membership in the YMCA under the heading "YMCA Policy Acknowledgement, Liability Waiver and Photo Release," purported to waive certain claims against the YMCA. The liability waiver provided as follows:

> In consideration of gaining membership and/or being allowed to participate in the activities and programs of the YMCA of Middle Tennessee ("YMCA") and to use its facilities (whether owned or leased), equipment and machinery, I do hereby waive, release and forever discharge the YMCA and its officers, agents, employees, volunteers, representatives, directors and all others from any and all responsibility or liability for injuries or damages resulting from my participation in such activities or programs or my use of such facilities, equipment or machinery, even if such damage or injury results from a negligent act or omission.

By signing the membership application, Ms. Torres acknowledged that she understood and agreed to the liability waiver.

After the completion of some discovery, the YMCA moved for summary judgment on the basis that, through the liability waiver, Ms. Torres expressly assumed the risk of injuries that could occur as result of her use of YMCA facilities. In response, Ms. Torres argued that the word "facilities" in the liability waiver was ambiguous and should be interpreted to exclude her use of the showers. Alternatively, she argued that reading "facilities" to include the showers rendered the liability waiver overly broad and unenforceable. Finally, she argued that her injury was the result of the YMCA's gross negligence and, thus, the liability waiver could not exempt the YMCA from liability.

The trial court granted summary judgment. It concluded that the waiver applied to the bathroom, shower, and shower seat that Ms. Torres was using. The court also concluded that the waiver was enforceable. As for the allegations of gross negligence, it determined that Ms. Torres's complaint contained no such allegation, rather the allegation first arose in response to the motion for summary judgment.

## II.

On appeal, Ms. Torres does not dispute that she signed a contract with an exculpatory clause. Instead, she contends that the term "facilities" as used in the

---

[2] Initially, Ms. Torres sued the YMCA Foundation of Middle Tennessee. Later, by agreement, the court substituted the Young Men's Christian Association of Middle Tennessee for the original defendant, but the style of the case was never changed.

exculpatory clause is ambiguous such that summary judgment should have been denied. Next, she complains that the contract "did not specifically point to the waiver language where it should have" given the broad nature of the waiver. Her last issue is a request that this Court "reconsider" existing common law to the extent it favors the YMCA's argument that the liability waiver barred her claims.

A trial court's decision on a motion for summary judgment is a question of law that enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). So we review the record de novo and make a fresh determination of whether the requirements governing summary judgment under Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. Under Rule 56, summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04.

## A.

Ms. Torres describes her threshold issue as "whether the term 'facilities,' in the context of this contract and the waiver . . . , would even include the shower." Contract interpretation is a question of law, which we also review de novo with no presumption of correctness. *Allmand v. Pavletic,* 292 S.W.3d 618, 624-25 (Tenn. 2009). The "cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties" as expressed in the plain language of the contract. *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). If the language used is unambiguous, we enforce the contract as written. *Id.* So, in interpreting a contract, our first task "is to determine whether the language of the contract is ambiguous." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

Ms. Torres contends that the word "facilities" is ambiguous. She notes that the YMCA's website has a specific section for "Facilities," which "includes items like an indoor running track, pool, sauna, and aerobics center, i.e., what would come to mind when one thinks of 'facilities' in a gym context." Not listed on the website are "'waiting area,' 'hallways,' 'sidewalks,' 'ventilation shafts,' or, indeed, 'showers.'" So she submits that the word "facilities" can be understood in multiple ways. *See Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190-91 (Tenn. 1973) (describing "[a] contract [a]s ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one"). Beyond the website, she argues that, because the word "facilities" precedes the words "equipment and machinery" in the liability waiver, the parties intended facilities to mean only those parts of the building related to physical activity.

3

Even if the YMCA website was an appropriate consideration,[3] we do not find the word "facilities" ambiguous as used in the liability waiver. "A word . . . may, standing alone, be capable of two meanings and yet the contract may be unambiguous" after the entire text is considered. *A & P Excavating & Materials, LLC*, v. *Geiger*, 622 S.W.3d 237, 248 (Tenn. Ct. App. 2020) (quoting *Fisher v. Revell*, 343 S.W.3d 776, 779-80 (Tenn. Ct. App. 2009)). A "facility" is "something designed, built, installed, etc., to serve a specific function affording a convenience or service." *Facility*, WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 509 (1989). "Facilities" may be "[a] building, room, array of equipment, or a number of such things, designed to serve a particular function." *Facility*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 632 (5th ed. 2016). Here, the liability waiver indicates the functions served by the covered "facilities." Facilities encompass any buildings or rooms where Ms. Torres might "participate in the activities and programs of the YMCA" or that she might "use" as a member. This would certainly include the showers where she was injured. So we conclude the liability waiver is not limited to the parts of the building related to physical activity.

## B.

For her next issue, Ms. Torres claims the membership application "did not specifically point out the waiver language where it should have, considering the very broad negligence YMCA purports to disclaim." As explained by our supreme court, "the enforceability of an exculpatory agreement should be determined by considering the totality of the circumstances and weighing th[ree] non-exclusive factors." *Copeland v. Healthsouth/Methodist Rehab. Hosp., LP*, 565 S.W.3d 260, 274 (Tenn. 2018). The factors include (1) the "relative bargaining power of the parties; (2) clarity of the exculpatory language, which should be clear, unambiguous, and unmistakable about what the party who signs the agreement is giving up; and (3) public policy and public interest implications." *Id.* Although Ms. Torres has framed her issue as only addressing the clarity factor, the argument in her brief addresses all three factors.

"Appellate review is generally limited to the issues that have been presented for review." *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012). Thus, "[a]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with [the Tennessee Rules of Appellate Procedure]." *Id.* at 335. Here, although the issue statement is narrower than the argument in the brief, the YMCA has addressed all the factors argued by Ms. Torres, so we do as well. *See Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024) (instructing appellate courts to "not decline to address a clearly

---

[3] Although Mr. Torres brought the YMCA website to the trial court's attention in her response to the motion for summary judgment and at the hearing on the motion, she did not include the website information in as an additional material fact. *See* TENN. R. CIV. P. 56.03.

4

presented argument that falls within the scope of the stated issues simply because the stated issues were not crafted as precisely as they could have been").

As for the relative bargaining power of the parties, "two key criteria are the importance of the service at issue for the physical or economic well-being of the party signing the agreement and the amount of free choice that party has in seeking alternate services." *Copeland*, 565 S.W.3d at 274 (citing *Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996)). Here, the liability waiver was presented on a take-it-or-leave-it basis, but the services offered by the YMCA are not essential. Ms. Torres was also free to seek out other operators of fitness centers in the area.

The clarity factor focuses on several elements of an enforceable exculpatory agreement. The "agreement must clearly and unequivocally state a party's intent to be relieved from liability, and the wording must be 'so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away.'" *Id.* (quoting *Sanislo v. Give Kids the World, Inc.*, 157 So.3d 256, 260-61 (Fla. 2015)). "The language must also alert the party agreeing to the exculpatory provision that the provision concerns a substantial right." *Id.* at 274-75. And "the agreement should not be so broad as to relieve the exculpated party from liability for any injury for any reason." *Id.* at 275.

Ms. Torres claims the waiver language is unclear, not only because of the terms used, but also because of the placement and formatting of the waiver. The liability waiver is preceded by a heading in bold, large type, and all capitals—**YMCA POLICY ACKNOWLEGEMENT, LIABILITY WAIVER AND PHOTO RELEASE**. The heading alone, according to Ms. Torres, fails to "convey the extent to which the subsequent waiver removes members' rights."[4] In her view, the membership application only notified her that the waiver "cover[ed] exercise-related activities you would expect to be waiving at a gym."

We conclude that the membership application sufficiently notified Ms. Torres of the substantial rights she was being asked to waive. The waiver was also sufficiently placed and formatted to be enforceable. The membership application is only two pages; except for a privacy notice, all the terms are found on the second page. The bold heading alerting prospective members to a liability waiver appears at the top of ten separate paragraphs of varying length, most no more than two sentences. Liability waivers appear in both the second and third paragraphs. Even if the heading was insufficient to alert a prospective member of the waiver, just above the signature line, the following statement appears in bold: **By signing below I acknowledge that I understand and agree to the YMCA**

---

[4] Ms. Torres remarks in her brief that "it is hard to conceive of something this [liability waiver] does not cover." Yet, she makes no argument that the waiver is "so broad as to relieve the [YMCA] from liability for any reason." *See Copeland*, 565 S.W.3d at 275.

**policies, liability waiver and photo release stated above**. We also conclude that the terminology used in the liability waiver, including the term "facilities," is sufficiently clear and understandable to "an ordinary and knowledgeable person." *See id.* at 274.

The last factor addressed by the supreme court is the public policy and public interest implications of the exculpatory agreement. *Id.* "A private contract violates public policy if it conflicts with the constitution, statutes, or judicial decisions of this state or tends to be harmful to the public good, public interest, or public welfare." *Id.* at 275. In deciding if "the service involved is a public or essential service, courts should consider whether it is a type of service generally considered suitable for public regulation." *Id.* at 275-76. Another important consideration is "whether the services involved are of great importance to the public" or "a practical necessity for some members of the public." *Id.* at 276.

Ms. Torres concedes that, had she "been injured from a machine in the weight room or swimming in the pool, rather than sitting in a shower, there is almost no doubt the waiver would not only be enforceable, but in the public good." She argues that public policy is violated here for two reasons. The first relates to the exculpated party. She describes the YMCA as "one of the largest and most ubiquitous nonprofits in the state, with a specific mission to improve the physical and civic health of . . . Tennesseans across the socio-economic scale." The community mission, in her view, makes the YMCA not unlike a public carrier. The second relates to the mechanism of her injury, a shower seat intended to provide accessibility as required by the Americans with Disabilities Act. *See* 42 U.S.C. §§ 12101-12213.

We find neither reason convincing. Although the YMCA may have a community mission, the service at issue here is purely voluntary and not a practical necessity. Such services "generally do not affect the public interest or raise public policy concerns." *Copeland*, 565 S.W.3d at 278. Ms. Torres also claims no disability under the ADA, and the ADA has its own mechanisms for enforcement. *See* 42 U.S.C. § 12188.

C.

Finally, Ms. Torres submits that this case presents an opportunity for this Court to "reconsider" existing common law around liability waivers. But our supreme court has determined "that, subject to certain exceptions, parties are free to contract that one shall not be liable to the other for his negligence." *Crawford v. Buckner*, 839 S.W.2d 754, 759 (Tenn. 1992). Such waivers are not disfavored, but a waiver's enforceability should be evaluated based on the non-exclusive factors that we have examined above. *Copeland*, 565 S.W.3d at 271 n.15, 274. We are not free to depart from that precedent. *Bloodworth v. Stuart*, 428 S.W.2d 786, 789 (Tenn. 1968).

6

## III.

We conclude that the liability waiver signed by Ms. Torres covered her use of the shower seat and that the waiver was enforceable. So the trial court properly granted summary judgment. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.


     s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE